816 P.2d 986

**Douglas BRADSHAW, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 18725.**

Supreme Court of Idaho,
Idaho Falls, May 1991 Term.

Aug. 27, 1991.

Johnson Olson Bacon, Chtd., Pocatello (Idaho Legal Aid Services, Inc.), for petitioner-appellant. L. Charles Johnson, III argued.

Larry EchoHawk, Atty. Gen., Weldon B. Stutzman, Deputy Atty. Gen., Boise, for respondent. Weldon B. Stutzman argued.

BOYLE, Justice.

This is an appeal from proceedings brought pursuant to the Idaho Hospitalization of Mentally Ill Act, I.C. § 66–329, that resulted in the involuntary commitment and treatment of Douglas Bradshaw. Bradshaw does not appeal the commitment. Rather, he challenged the magistrate's finding that he lacked the capacity to make informed decisions about treatment and as a result was required to receive medication against his will while confined at State Hospital South.

## I.

### BACKGROUND AND PROCEEDINGS

Bradshaw was involuntarily committed to the custody of the Department of Health and Welfare on two occasions in the summer and fall of 1988. Initially, he was committed on August 11, 1988, pursuant to an application filed by the Bingham County

Prosecuting Attorney. As required by I.C. § 66–329, two designated examiners evaluated Bradshaw and their certificates were filed with the magistrate court.[1] Both designated examiners concluded that Bradshaw was mentally ill and recommended commitment.[2] Following a hearing, Bradshaw was committed to the custody of the Department of Health and Welfare at State Hospital South.

Following a petition for reexamination of the order of commitment, Bradshaw was reexamined by Dr. Dwight Petersen and William B. Steckbauer, MSW, who concluded his illness was in remission and that he was not dangerous to himself or others at that time. Bradshaw was discharged from State Hospital South on October 17, 1988.

On October 31, 1988, an application for Bradshaw's commitment was filed by his mother, LaRee Bradshaw. Again, the involuntary commitment process was initiated and Bradshaw was reexamined by Ray Ross, MSW, and reexamined by Dr. Peterson who found Bradshaw mentally ill and likely to injure himself or others. In addition, both Ross and Peterson concluded Bradshaw lacked capacity to make informed decisions about treatment.[3]

After the examiners' certificates were filed with the clerk of the court, Bradshaw filed a motion requesting the appointment of additional examiners on the grounds that Ross and Peterson were not objective in their evaluations. Bradshaw specifically requested that William B. Steckbauer, MSW, be designated as an additional designated examiner. The magistrate granted Bradshaw's motion and subsequently, he

was examined by Steckbauer and Dr. David Groberg. Both Steckbauer and Groberg found Bradshaw to be mentally ill and because of that mental illness, likely to cause harm to himself or others. In addition, both of these examiners found Bradshaw lacked capacity to make informed decisions about treatment and their designated examiners' certificates were filed with the court.

On November 18, 1988, a hearing was held on the petition to commit Bradshaw. Steckbauer and Groberg were called as witnesses to testify, and although present at the hearing, Ross was not called to testify. Following presentation of testimony, the magistrate found Bradshaw was mentally ill and committed him to the custody of the Department of Health and Welfare. The magistrate also found Bradshaw lacked the capacity to make informed decisions with respect to his treatment. As a result of the magistrate's finding, Bradshaw was involuntarily medicated during his confinement at State Hospital South. On May 19, 1989, Bradshaw was released from State Hospital South after it was determined his illness was once again in remission.

We are called upon to determine whether the magistrate erred in finding that Bradshaw lacked capacity to make informed decisions about his treatment. Bradshaw asserts that although all four designated examiners' certificates on file in the court record concluded he lacked capacity to make informed treatment decisions, sufficient evidence was not produced at the hearing to support this finding.[4]

1. Bradshaw was initially examined by Dr. Linda Hatzenbueler and Michael Elison, M.C. Idaho Code § 66–329 sets forth the requirements for an involuntary commitment. Examination of the proposed patient by designated examiners who are required to file certificates with the court is required. Designated examiners are appointed by the Department of Health and Welfare director and must meet the qualifications set forth in Idaho Code § 66–317.

2. Idaho Code § 66–329(c) requires the designated examiner to examine the proposed patient and determine whether the individual is: "(i) mentally ill; (ii) likely to injure himself or others or [is] gravely disabled; and (iii) lacks ca-

pacity to make informed decisions about treatment...."

3. Idaho Code § 66–317 defines the phrase "lacks the capacity to make informed decisions about treatment" as meaning "the inability, by reason of mental illness, to achieve a rudimentary understanding after conscientious efforts at explanation of the purpose, nature, and possible significant risks and benefits of treatment."

4. I.C. § 66–329(d) requires the designated examiner's certificate be filed with the court. I.C. § 66–329(k) requires the court to make its decision following completion of the hearing and consideration of the record.

## II.

## MOOTNESS

■ As a preliminary matter, we must address whether the issue raised by Bradshaw's appeal is moot in light of his release from State Hospital South.

■ It is clear that a case becomes moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353, 356 (1982), quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479, 490 (1980); *Adams v. Killeen,* 115 Idaho 1034, 1035, 772 P.2d 241, 242 (Ct.App.1989).

Following Bradshaw's release from State Hospital South in May of 1989, the magistrate's order regarding his capacity to make informed decisions about treatment terminated. Bradshaw's commitment having been terminated, any risk that he might be medicated against his will pursuant to the magistrate's November 18, 1988 order came to an end upon his release from the hospital. In order for Bradshaw to once again be subject to receiving medication and treatment against his will he would have to be recommitted in another court proceeding. In that circumstance, I.C. § 66–329 would require examination by designated examiners who would have to conclude Bradshaw was mentally ill and dangerous to himself or others or was severely disabled, and that Bradshaw lacked the capacity to make informed decisions regarding his medical treatment. In that event he would again be entitled to a hearing.

Because the issue in the instant case is no longer "live" as noted in *Murphy v. Hunt,* and the parties lack a legally cognizable interest in the outcome, Bradshaw's claim will not be considered unless an exception to the mootness doctrine applies. Although moot, an issue will be considered where issues of substantial public interest are involved. *Robinson v. Bodily,* 97 Idaho 199, 541 P.2d 623 (1975); *Nelson v. Marshall,* 94 Idaho 726, 497 P.2d 47 (1972);

*Dick v. Geist,* 107 Idaho 931, 693 P.2d 1133 (Ct.App.1985). Several courts have addressed the mootness question in the context of reviewing involuntary commitments and have concluded that public interest concerns warrant a review on the merits. *See Matter of Swanson,* 115 Wash.2d 21, 793 P.2d 962 (1990); *In re Bunnell,* 100 N.M. 242, 668 P.2d 1119 (Ct.App.1983); *cf. State v. Van Tassel,* 5 Or.App. 376, 484 P.2d 1117 (1971). These cases recognize the social stigma and potential collateral consequences that may accompany an involuntary commitment. We agree and hold that the issue of whether individuals will be required to receive medication against their will while committed is of similar public interest and concern. Accordingly, we will address this issue for future direction and guidance although it is technically moot in this instant action.

## III.

## CRITERIA FOR INVOLUNTARY COMMITMENT

Bradshaw asserts there was insufficient evidence introduced at the hearing for the magistrate to find and conclude that he lacked the capacity to make an informed decision about treatment. Idaho Code § 66–329(k) sets forth the criteria for an involuntary commitment and provides in pertinent part:

If, upon completion of the hearing *and consideration of the record,* the court finds by *clear and convincing evidence* that the proposed patient:

(1) is mentally ill; and

(2) is, because of such condition, likely to injure himself or others,

or is gravely disabled due to mental illness; the court shall order the proposed patient committed to the custody of the department director for an indeterminate period of time not to exceed three (3) years.... (Emphasis added.)

In addition, I.C. § 66–329(m) requires that an "order of commitment *shall* state whether the proposed patient lacks capacity to make informed decisions about treatment, ..." (Emphasis added.) After de-

termining that Bradshaw was mentally ill and likely to harm himself or others, the magistrate made a further finding regarding Bradshaw's incapacity to make informed treatment decisions.

The application of I.C. § 66–329 in the instant appeal raises three evidentiary questions: 1) whether the court's finding regarding capacity to make informed decisions about treatment is subject to a clear and convincing evidentiary standard; 2) whether the designated examiners' certificates filed with the court are part of the "record" in the absence of their admission into evidence, and 3) whether, as contemplated by the Act, the certificates were properly relied upon by the magistrate in making its decision.

### A. Clear and Convincing Evidence Required to Involuntarily Medicate.

■ We first consider whether I.C. § 66–329 requires that a finding that the patient's capacity to make informed decisions about treatment be supported by clear and convincing evidence. As a preliminary observation, I.C. § 66–329(k) requires a finding by clear and convincing evidence that the patient is mentally ill and because of the condition is likely to injure himself or others. Although I.C. § 66–329(m) does not expressly require a clear and convincing evidentiary standard for involuntary medication and treatment, we feel compelled to adopt this level of proof given the significance of the intrusion upon the committed person's liberty interests. *Cf. Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). Additionally, we note an analogous situation exists under I.C. § 66–322(i), also a part of the Hospitalization of Mentally Ill Act. This part of the Act requires clear and convincing evidence in determining wheth-

er a guardian needs to be appointed to make treatment decisions for a patient who lacks the capacity to make informed decisions about treatment. Considering the general intent of the legislature in adopting the Act, there is no valid reason to require clear and convincing evidence to commit a patient, and then impose a different standard for a determination of capacity to make decisions regarding treatment. Given the significant interests involved, and to ensure uniform evidentiary standards are applied in commitment cases, we hold that a finding of lack of capacity to make an informed decision about treatment must also be supported by clear and convincing evidence.

### B. Magistrate May Not Rely on Examiner's Certificate Unless Admitted Into Evidence.

■ The second evidentiary question before us relates to whether the designated examiner's certificate that is statutorily required to be filed with the court may be relied upon by the magistrate in making a determination regarding an involuntarily committed patient's capacity to make decisions about treatment.[5] I.C. § 66–329(k) requires the magistrate to make its determination "upon completion of the hearing *and consideration of the record*, ..." (Emphasis added.) I.C. § 66–329(j) states "... [a] record of the proceedings shall be made as for other civil hearings. The hearing shall be conducted in as informal a manner as may be consistent with orderly procedure. The court shall receive all relevant and material evidence *consistent with the rules of evidence*." (Emphasis added.)[6] We deem it significant that the legislature has required that commitment decisions be made upon "consideration of the record," and that the proceeding be con-

---

5. The certificates filed by all four designated examiners pursuant to Bradshaw's November, 1988 commitment contained a conclusion that Bradshaw lacked the capacity to make informed decisions about treatment.

6. Although the examiners' certificates were part of the clerk's file which was before the magistrate judge at the time of the hearing, the record does not indicate that the certificates were ad-

mitted into the evidentiary record or whether they were considered or relied upon by the magistrate. Accordingly, unless admitted into evidence at the commitment hearing the certificates are not part of the evidentiary record as contemplated by I.C. § 66–329(j) and (k), and may not be considered by the magistrate court in making its determination to commit the patient and order involuntary medication.

ducted "consistent with the rules of evidence."

While the designated examiners' certificates filed with the clerk of the court and contained in the file physically before the presiding magistrate are part of the record, we hold that they may not be relied upon by the magistrate in making its evidentiary decision to commit or involuntarily medicate a patient unless the certificates are actually admitted into evidence. This requires that any evidence upon which the magistrate relies, including the examiners' certificates already on file, must be properly admitted into evidence. In the instant case the examiners' certificates, although physically filed and contained in the clerk's file, were not offered or admitted into evidence. Accordingly, the magistrate court could not have considered or relied upon the certificates without further evidence and the order concerning treatment would not have been supported by the evidence.

■ In addition, we note significant procedural protections exist that ensure the proposed patient is given the opportunity to challenge the conclusions of the designated examiners and other witnesses. I.C. § 66–329(f) and (g) entitle the proposed patient to court appointed counsel if he or she does not, or is unable to provide their own, and I.C. § 66–329(j) requires the proposed patient "... be afforded an opportunity to appear at the hearing, to testify, and to present and cross-examine witnesses...." In the instant case the designated examiners either testified or were present at the hearing and were available for cross-examination. The protections afforded under the Act were available, and Bradshaw's rights were not denied even though the certificates were not admitted into evidence. At the hearing, in addition to testimony from both Steckbauer and Groberg that Bradshaw was mentally ill and likely to injure himself or others, Steckbaurer testified that Bradshaw did not believe he was mentally ill or that others wanted to help him. Steckbauer also testified that without treatment, Bradshaw's condition would worsen and that it was more likely to improve rapidly if Bradshaw would take medi-

cation and cooperate with the staff. Dr. Groberg testified that because of Bradshaw's inability to follow treatment and medical advice, he believed Bradshaw would not care for himself and that his treatment needed to be ordered.

■ It is well established that a trial court's findings of fact will not be disturbed on appeal where the court's findings are supported by competent and substantial evidence. *Barber v. Honorof,* 116 Idaho 767, 780 P.2d 89 (1989); *State v. Tierney,* 109 Idaho 474, 708 P.2d 879 (1985); *MacNeil v. Minidoka Memorial Hosp.,* 108 Idaho 588, 701 P.2d 208 (1985). Having reviewed the record, the finding of the magistrate that Bradshaw lacked the capacity to make informed decisions about treatment is supported by substantial and competent evidence in the record. Therefore, the magistrate's findings regarding Bradshaw's lack of capacity to make informed decisions regarding his treatment will not be disturbed on appeal.

## IV.

## CONCLUSION

Although the issue of involuntary medication treatment is technically moot because Bradshaw has been released from the hospital, the issue is of sufficient public interest and concern that we have addressed this issue to provide future guidance and direction. We hold that clear and convincing evidence of incapacity to make informed decisions about treatment is required and is the standard to be applied to order involuntary medication and treatment. We further hold that the examiners' certificates may not be relied on by the court unless admitted into the evidentiary record in a manner "consistent with the rules of evidence." Although the certificates were not so admitted, the hearing transcript record contains the testimony of the examiners which supports the magistrate court's findings that Bradshaw lacked capacity to make informed decisions about treatment.

Bradshaw raises other issues on appeal. We deem those issues to be without merit.

Judgment affirmed.

BAKES, C.J., and BISTLINE, JOHNSON and McDEVITT, JJ., concur.