887 P.2d 35

**Steve JOHNSON, Plaintiff–Appellant,**

v.

**BONNER COUNTY SCHOOL DISTRICT NO. 82, acting through the Board of Trustees, Steve Imlay, Tim Scofield, J. Ford Elsaesser, Ralph Sletager, and Jim Feuling, who are named in their official capacity only, Defendants–Respondents.**

No. 20674.

Supreme Court of Idaho, Coeur d'Alene, October 1994 Term.

Dec. 27, 1994.

Stoel Rives Boley Jones & Grey, Boise, and Steven C. Verby, P.A., Sandpoint, for appellant. Kathleen P. Brooks and Steven C. Verby, argued.

Green Law Offices of Boise, and Charles M. Dodson, Coeur d'Alene, argued, for respondent.

JOHNSON, Justice.

This is a due process of law case. It presents the Court with a question of first impression: Does a trial court have the power to grant injunctive relief to prevent a biased decisionmaker from conducting a due process hearing? We have decided to address this question, even though the case is moot because the hearing has already been held. We do so because the question is one of first impression in this Court and because of substantial public interest in the question. Addressing the question, we conclude that a

trial court may prevent a decisionmaker from participating in a due process hearing upon a showing that there is a probability that the decisionmaker will decide unfairly any issue presented in the hearing. We do not remand the case to the trial court because the granting or denying of injunctive relief is now moot, the hearing having been held.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

Steve Johnson was a principal and teacher employed by Bonner County School District No. 82 (the district). Johnson became embroiled in a public controversy with the board of trustees (the board) of the district during the 1992–93 school year. When faced with discharge proceedings before the board, Johnson sought a temporary restraining order and preliminary injunction to prevent the hearing on the grounds that the board was irrevocably biased against him and therefore a constitutionally impermissible decisionmaker.

For purposes of this appeal, we accept the following facts alleged by Johnson as providing the background in which this case arose:

The majority of the board who are defendants in this case took office in 1991. Johnson disagreed with the new board's policies and actions on issues such as student evaluation, teaching methodology, classroom size, and standardized testing practices. In the fall of 1992, Johnson organized a meeting between district principals and the board at which he questioned the board's policies.

On January 12, 1993, the superintendent of the district (the superintendent), informed Johnson he was dissatisfied with Johnson's performance. That evening the board demoted Johnson to a teaching position. Johnson says he was not notified of the meeting, nor was he present. Two days later the local newspaper printed a lengthy letter to the editor from Johnson. The letter discussed eleven "actions" taken by the board and the superintendent and accused them of unethical conduct and abuses of power. Johnson was particularly critical of the board's policies on standardized achievement testing and its purchase of test preparation resources. According to Johnson, he submitted the letter to the newspaper on January 12th before learning of his demotion.

The dispute escalated into a public feud as members of the board responded to Johnson's charges in letters to the editor of the local newspaper. The local newspaper also published interviews with Johnson and members of the board. On January 19, 1993, the board issued a press release announcing Johnson's demotion.

Two board members made the following comments in letters to the editor and in interviews published in the local newspaper:

It's a lie. There is no tactic of retaliation or intimidation.... [Referring to Johnson's charges of abuse of power.]

It is "unfounded paranoia." [In response to Johnson's claim test scores were used to evaluate teachers.]

[An] out-and-out misrepresentation ... a complete falsehood. [Responding to Johnson's characterization of preparatory materials as "cheat sheets."]

His [Johnson's] allegations distort and misrepresent the facts in every instance.

This is totally false and an absolute fabrication. [Referring to Johnson's allegation the board maintained a "hit list" of district employees it wanted to eliminate.]

On March 5, 1993, the superintendent, accompanied by the district's attorney and three other district employees, went to the school where Johnson worked to notify Johnson he was suspended. The superintendent escorted Johnson from the building, and the locks on the doors were changed.

On March 28, 1993, Johnson received a notice of intent to discharge him from employment by the district. The charges in the notice included: (a) "distorting and misrepresenting facts concerning educational matters, more particularly as set forth in the various publications, both written and verbal, advanced by Mr. Johnson to the press," (b) "failing to accord just and equitable treatment to all members of the profession ... more particularly gross unfettered attacks by way of publication," and (c) "failing to con-

duct professional business through appropriate channels."

On April 19, 1993, Johnson sued the district alleging the bias of the board, based on the statements of four members of the board indicating they had prejudged the charges made in the notice of discharge. Johnson requested a temporary restraining order and injunctive relief to prevent the entire board from acting as the decisionmaker in the hearing to terminate his employment. On the same day Johnson filed this action, District Judge Haman issued a temporary restraining order (TRO) restraining the board from convening for the purpose of terminating Johnson's employment. Based on Johnson's verified complaint and the supporting affidavits, Judge Haman found that Johnson would be irreparably injured "by loss of employment and by having to appear before a board which has previously stated its position on the issues it is to judge." The same day, Judge Haman, in his role as administrative district judge, assigned District Judge Kosonen to the case.

In conjunction with a hearing before Judge Kosonen concerning a motion to dismiss of the district, Johnson submitted affidavits documenting private comments made by four members of the board. One of these affidavits indicated that one board member said: "The adverse publicity surrounding the case was "hurting his business." A second affidavit indicated that another member of the board said he was "personally hurt" by Johnson's statements, and that he did not know "if it is the best idea for [Johnson] to be a full time teacher." A third affidavit indicated that a third board member said he intended to file a libel suit against Johnson.

The board submitted affidavits of each member of the board denying the charges of bias, and declaring themselves capable of providing Johnson with a fair and impartial hearing. In their affidavits, several members of the board acknowledged that Johnson's comments had caused "disconcert" and "discomfort." The board member who allegedly threatened to file a libel action against Johnson, indicated in his affidavit that he would recuse himself from Johnson's termination hearing.

At the beginning of the hearing on the motion to dismiss, the trial court acknowledged that for the purposes of considering the motion it would assume all the assertions in Johnson's complaint to be true and would draw all inferences from those assertions in Johnson's favor. In effect, for the purpose of considering the motion to dismiss, the trial court assumed that the bias alleged in Johnson's complaint existed.

Following the hearing, the trial court ruled that it did not have the power to enjoin the district in these circumstances, quashed the TRO, and dismissed the case.

The board proceeded with the hearing and discharged Johnson.

Johnson appealed the trial court ruling.

## II.

**ALTHOUGH JOHNSON'S APPEAL IS MOOT, BECAUSE THE ISSUE PRESENTED IS OF SUBSTANTIAL PUBLIC INTEREST, THE COURT WILL ADDRESS THE ISSUE FOR FUTURE DIRECTION AND GUIDANCE.**

Although neither the district nor Johnson addressed mootness in their briefs on appeal, before oral argument the Court ordered the parties to file supplemental briefs concerning mootness. We conclude that the request for injunctive relief is now moot. Nevertheless, because the issue presented is of substantial public interest, we address whether the trial court had the power to consider granting an injunction in the circumstances in this case.

In *Detweiler Mercantile Co. v. Babcock*, 44 Idaho 777, 260 P. 162 (1927), a merchant sought an injunction to prevent a school board from accepting a bid for coal, claiming he had submitted a lower one. The Court dismissed the appeal from the denial of the injunction as moot because the school board by then had accepted the initial bid and purchased the coal. *Id.* at 778, 260 P. at 163.

Likewise, because Johnson's discharge hearing has been completed, the trial court's

dismissal of Johnson's request for injunctive relief is moot.

In *Bradshaw v. State*, 120 Idaho 429, 816 P.2d 986 (1991), the Court decided to address a moot issue because of "public interest and concern," stating: "[W]e will address this issue for future direction and guidance although it is technically moot in this instant action." *Id.* at 432, 816 P.2d at 989.

Local school districts play a vital role in the educational process in Idaho, and the constitutional validity of decisions of local school boards is a matter of substantial public interest. Therefore, we address whether the trial court had the power to consider injunctive relief preventing one or more of the members of the board from participating in the hearing to consider discharging Johnson. As in *Bradshaw*, however, our decision will be for future direction and guidance, although the issue is moot in this case because the hearing has been held.

### III.

**A TRIAL COURT MAY ENJOIN A DECISIONMAKER FROM CONDUCTING A DUE PROCESS HEARING, UPON A SHOWING THAT THERE IS A PROBABILITY THAT THE DECISIONMAKER WILL DECIDE UNFAIRLY ANY ISSUE PRESENTED IN THE HEARING.**

Johnson asserts that a trial court may enjoin a biased decisionmaker from conducting a due process hearing. We agree, upon a showing that there is a probability that the decisionmaker will decide unfairly any issue presented in the hearing.

The district does not question that Johnson had a property interest in his employment with the district, entitling him to the requirements of due process of law before his employment was terminated.

In *Bowler v. Board of Trustees*, 101 Idaho 537, 543, 617 P.2d 841, 847 (1980), the Court confirmed: "It is well established that 'actual bias of a decisionmaker is constitutionally unacceptable.'" In *Bowler*, the Court also referred to the standards for assessing bias in *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct.

1456, 43 L.Ed.2d 712 (1975) and *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976).

In *Withrow*, the Supreme Court said:

Not only is a biased decisionmaker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness." In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which *[the adjudicator] has been the target of personal abuse or criticism from the party before [the adjudicator].*

*Withrow*, 421 U.S. at 47, 95 S.Ct. at 1464, 43 L.Ed.2d at 723 (citations omitted) (footnotes omitted) (emphasis added).

Counterposed against this statement is *Hortonville* where the Supreme Court held:

Mere familiarity with the facts of a case ... does not, however, disqualify a decisionmaker.... *[n]or is a decisionmaker disqualified simply because [the decisionmaker] has taken a position, even in public, on a policy issue related to the dispute,* in the absence of a showing that [the decisionmaker] is not "capable of judging a particular controversy fairly on the basis of its own circumstances."

*Hortonville*, 426 U.S. at 493, 96 S.Ct. at 2314, 49 L.Ed.2d at 9 (citations omitted) (emphasis added) (quoting *United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429, 1435 (1941)).

In *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), optometrists who worked for professional corporations sought to prevent an allegedly biased state licensing board from revoking their licenses. The board, composed by law exclusively of private optometrists, had previously brought a lawsuit against those whose licenses they proposed to revoke on virtually identical charges to those that were the basis for the proposed revocation. In addition, there was a serious question of the board's person-

al financial stake in the matter in controversy. The Supreme Court affirmed the three-judge district court's authority to issue an injunction against the state administrative proceeding where the optometrists whose licenses were at issue had a property interest in their right to practice their profession. In doing so, the Court said:

> For the District Court, the inquiry was not whether the Board members were "actually biased but whether, in the natural course of events, there is an indication of a possible temptation to an average [person] sitting as a judge to try the case with bias for or against any issue presented to [the person]."

*Id.* at 571, 93 S.Ct. at 1694, 36 L.Ed.2d at 495 (quoting from the decision of the district court, *Berryhill v. Gibson,* 331 F.Supp. 122, 125 (D.C.Ala.1971)).

From *Bowler, Withrow, Hortonville,* and *Gibson,* we conclude that upon a showing that there is a probability that a decisionmaker in a due process hearing will decide unfairly any issue presented in the hearing, a trial court may grant an injunction to prevent the decisionmaker from participating in the proceeding.

Because we address only the power of the trial court to enjoin a biased decisionmaker from participating in a due process hearing, we find it unnecessary to wrestle here with the knotty question of an alternate decisionmaker, if enough of the board members are disqualified from sitting in a hearing to deprive the board of a quorum. *See* I.C. § 33-510 (1981) ("A quorum for the transaction of business of the board of trustees shall consist of a majority of the members of the board.") In the event a board is deprived of a quorum, our trial courts will find it necessary to devise creative solutions to the dilemma presented by this circumstance.

Also, we point out that we have considered only the question of the trial court's dismissal of Johnson's complaint, not whether the trial court would have abused its discretion by either granting or denying Johnson an injunction. Because the board has already conducted the hearing, the question of the grant or denial of an injunction is moot.

## IV.

## CONCLUSION.

We reverse the trial court's dismissal of Johnson's complaint. Because of the mootness of the request for injunctive relief, we find no reason to remand the case to the trial court.

Because of the unusual nature of our decision, we do not award costs or attorney fees on appeal.

McDEVITT, C.J., TROUT and SILAK, JJ., and LEGGETT, J. Pro Tem., concur.