# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46041

IN THE MATTER OF: JOHN DOE I,
JANE DOE I, JANE DOE II, JOHN DOE
II, JANE DOE III, JOHN DOE III, MINOR
CHILDREN

STATE OF IDAHO

      Petitioner-Respondent,

v.

JANE DOE,

      Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, October 2018 Term**

**Filed: November 28, 2018**

**Karel A. Lehrman, Clerk**

————————

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie R. Tucker, Magistrate Judge.

Doe's appeal is <u>dismissed.</u>

Canyon County Public Defender's Office, Caldwell, for appellant. Marc Bybee argued.

Idaho Attorney General's office, Boise, for respondent. Matthew Thompson, Deputy Attorney General argued.

————————————

STEGNER, Justice.

Jane Doe (Doe) appeals from an order of the magistrate court in which it awarded protective custody of Doe's three nieces and three nephews to the Idaho Department of Health and Welfare (Department). Following an adjudicatory hearing, the magistrate court found the children fell within the jurisdiction of the Child Protective Act (CPA) based on neglect, homelessness, and an unstable home environment. Doe stipulated during the hearing that it was in the best interests of the children to vest their custody with the Department. Doe appeals alleging that the judge erred in concluding the children were neglected and that the Department

1

made reasonable efforts to prevent removal. Doe also contends her right to due process was violated because she was unable to conduct substantive discovery. Based on the reasons set out in this opinion, we conclude there is not a justiciable controversy presented. As a result, we dismiss Doe's appeal because the issues raised are moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Doe is the maternal aunt and legal guardian for her sister's six biological children, who at this writing are fifteen, fourteen, eleven, eight, six, and five years of age. The children had lived with Doe for over four years at the time of the judge's ruling. Doe obtained legal guardianship over the children in April 2017. The guardianship of each of the six children was sanctioned by courts of competent jurisdiction; however, the Department was apparently not involved as a party in Doe being awarded guardianship of her sister's children.

On March 21, 2018, Nampa City police officers, which included Officer Joel Woodward, arrived at the Starlite Motel in Nampa to serve a warrant on Doe. (The warrant was a "serve and release" warrant, the basis for which was an allegation that Doe had committed a petit theft.) At the time, Doe was living at the motel with the six children and her mother. Prior to opening the door to the unit, the officers smelled the odor of burnt marijuana. Upon the door being opened, the smell of marijuana became noticeably stronger. The unit was described as approximately twelve feet by fifteen feet, with one queen-sized bed and one bathroom. Inside the unit, the officers found clothing, trash, a deflated air mattress, and what they perceived as visible black mold on the windows and in the bathroom. The only sink, which was in the bathroom, was piled with dirty dishes. More dirty dishes were strewn about the living area. Doe and the seven other members of her household had been living in the room since August 2017.

With the permission of Doe, the officers searched the squalid motel room. In it, they found a small amount of marijuana, two devices for smoking marijuana, and a marijuana grinder located on a nightstand. All of these items were within easy reach of the five-year-old boy who was present with his aunt (Doe) and grandmother during the search. Officer Woodward cited Doe for possession of marijuana and paraphernalia, but chose not to arrest her, nor did he serve her with the warrant for petit theft.

Officer Woodward declared the six children to be in imminent danger, requiring their immediate removal based on Idaho Code section 16-1608. He later testified that his reasons for

declaring the children to be in imminent danger included the presence of a substance he believed to be black mold, the deplorable living conditions of the motel room, and that the room and its furnishings were insufficient to house eight individuals.

Shortly after the children were taken into State custody by the police, a multi-day shelter care hearing was conducted by the magistrate court. In addition to the facts established by Officer Woodward's report,[1] testimony was elicited that upon being placed in shelter care, the youngest child had such a severe case of head lice it necessitated his visit to a hospital emergency room because the lice were on his eyelashes and getting in his eyes. (He was prescribed medication to address the problem.) At the conclusion of that hearing, the judge found the children subject to the court's jurisdiction under the CPA due to an unstable home environment. In addition, the judge found it contrary to the children's best interests to remain in the motel room until an adjudicatory hearing could be conducted.

The adjudicatory hearing that was held on multiple days in late-April and early-May 2018. During that hearing, Doe stipulated that it would be in the children's best interests for their custody to vest with the Department. The foster parent for two of the children also testified at the hearing that a second child (in addition to the youngest) required treatment for head lice. Further testimony was elicited that one of the children, who is legally blind without glasses and had been prescribed them, had gone two months without glasses. Finally, all but one of the other five children needed corrective lenses, but had not gotten them.

Theresa Torres (Torres), a Child Safety Assessor with the Department, testified that the room in which the eight family members lived was kept in a "hazardous" condition. At the time of the children's removal, Torres had asked Doe about whether there were any other family members with whom the children could reside until the adjudicatory hearing, and was advised there were not. Torres testified that "given the issues with the mold, lack of storage, lack of proper food storage abilities, there was nothing immediate that could have been done" to allow the children to remain with Doe. Following the children's removal, Doe was referred to Navigation (a service operated by the Department to provide information and assistance with accessing Department resources) and an appointment had been scheduled to assist her in obtaining funding from the Department; however, Doe was unable to appear for the appointment

---

[1] Officer Woodward did not testify at the shelter care hearing, but his written report was attached to the petition brought pursuant to the CPA.

because it conflicted with the shelter care hearing. However, Doe never rescheduled that appointment. The Department investigated shelter options for Doe and the six children, but because of the age of the oldest male child, they were disqualified as a group from accessing a shelter.

At the conclusion of the adjudicatory hearing, the magistrate court found the children within the jurisdiction of the CPA based on an unstable home environment, neglect, and homelessness. The court found there was trash, and an accumulation of clutter, garbage, and dirty dishes in the motel room. The children had neither acceptable accommodations for sleeping, nor for personal hygiene. There were marijuana and paraphernalia within ready access of the children in their living area. There were unresolved medical issues with one child needing eye drops for lice, another one with lice in her hair, and all but one of the six needing eye glasses and not having them.

The magistrate court also found the Department had exercised reasonable efforts to both mitigate removal and to enable reunification, but that Doe had not done what she needed to do to take advantage of the opportunities available to her.

Doe appeals alleging that her due process rights were violated when the children were removed from her custody and when she was not permitted discovery of information that would have aided her in her defense of the Department's efforts. She also alleges the magistrate court erred in finding that the children had been neglected and in concluding that the Department engaged in reasonable efforts to prevent the children's removal.

## II. QUESTION PRESENTED ON APPEAL

1. Has Doe presented a justiciable controversy on appeal?

## III. STANDARD OF REVIEW

"Jurisdictional issues, like standing, are questions of law, over which this Court exercises free review." *Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017) (quoting *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012)). "[J]usticiability challenges are subject to Idaho Rule of Civil Procedure 12(b)(1) since they implicate jurisdiction." *Tucker*, 162 Idaho at 18, 394 P.3d at 61. "[J]usticiability doctrines can be raised *sua sponte* at any time." *Id.* at 18 n.4, 394 P.3d at 61 n.4.

4

## IV. ANALYSIS

Doe appeals from a decision of the magistrate court following an adjudicatory hearing in which the judge awarded protective custody of Doe's three nieces and three nephews to the Department. However, Doe stipulated during the hearing that it was in the best interests of the children to be in the custody of the Department. The question we must answer is whether Doe's appeal presents a justiciable controversy. We conclude it does not.

The threshold question presented is whether Doe's appeal presents a case or controversy. The Idaho Constitution states "[t]he Supreme Court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof . . . ." [2] Art. V, § 9. Doe appeals from a decision of the magistrate court which by rule is appealable directly to the Supreme Court. I.A.R. 11.1(b)(2), 12.1(a)(2). However, simply because an issue is appealable, does not mean it is appropriate for this Court to hear it. When an appeal is taken from an appealable judgment to the Supreme Court, that Court has jurisdiction and authority to review any and "[a]ll . . . orders and decisions made by the trial court to which the party has duly excepted and preserved his objection and exception in the manner and form prescribed by law . . . may be reviewed on appeal . . . ." *Weiser Irrigation Dist. v. Middle Valley Irrigation Ditch Co.*, 28 Idaho 548, 553, 155 P. 484, 486 (1916).

In this case, by stipulating to the custody of the children being vested with the Department, Doe has not preserved the error she contends occurred. There was neither an objection to nor an exception to the magistrate court vesting custody of the children with the Department. Doe stipulated to this result. When a litigant stipulates to the entry of an order, it renders an appeal of that order nonjusticiable as moot. "[A] case becomes moot when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991) (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)). There are exceptions to the mootness doctrine. *See State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010). However, none of those exceptions apply here. In short, Doe has not presented a justiciable controversy for this Court to resolve. For this reason, Doe's appeal is dismissed.

---

[2] By Court Rule, the "[j]urisdiction of magistrates is the same as that of district judges . . . ." I.C.A.R. 5(a). *See also* I.C. § 1-2201 ("Pursuant to the provisions of section 2 of article V of the Idaho Constitution there is hereby established in each county of the state of Idaho a magistrate division of the district court.").

## V. CONCLUSION

This appeal is dismissed.

Chief Justice BURDICK, Justices HORTON, BRODY and BEVAN, CONCUR.