**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35473**

| | | |
|---|---|---|
| GIOVANNI M. MENDIOLA, | ) | |
| | ) | **2010 Opinion No. 66S** |
| Petitioner-Appellant, | ) | |
| | ) | **Filed: November 10, 2010** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| STATE OF IDAHO, | ) | |
| | ) | **SUBSTITUTE OPINION** |
| Respondent. | ) | **THE COURT'S PRIOR OPINION** |
| | ) | **DATED SEPTEMBER 21, 2010, IS** |
| | ) | **HEREBY WITHDRAWN** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Order denying application for post-conviction relief, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant. Sarah E. Tompkins argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

MELANSON, Judge

Giovanni M. Mendiola appeals from the district court's order denying his application for post-conviction relief. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Mendiola was charged with nine felony counts, including robbery, conspiracy to commit robbery, kidnapping, conspiracy to commit kidnapping, and first degree murder. Two of Mendiola's brothers and a former brother-in-law were also charged with multiple felonies stemming from the same incidents that gave rise to Mendiola's charges. In exchange for Mendiola's guilty plea to second degree murder, the state agreed to dismiss the remaining charges against Mendiola and reduce the charges against his brothers and brother-in-law to one

1

count each of accessory to a felony. In addition, the state agreed that his sisters would not be prosecuted.

At a change of plea hearing, Mendiola entered an *Alford*[1] plea to second degree murder. During the plea colloquy, Mendiola asserted that he was pleading guilty to spare his brothers and sisters from prosecution. Mendiola's trial counsel stated on the record that Mendiola was acting against the advice of counsel by pleading guilty. The district court accepted Mendiola's plea, concluding that the plea was voluntarily made and that there was a factual basis for the plea. At sentencing, Mendiola once again asserted that he was pleading guilty to protect his brothers and sisters and, for the first time, also contended that he committed the murder in self-defense. With the exception of Mendiola's statements, Mendiola's counsel did not present any other evidence at the change of plea hearing or the sentencing hearing to establish that Mendiola had acted in self-defense.

Mendiola was sentenced to a unified term of life in prison, with a minimum period of confinement of eight years. He did not appeal his judgment of conviction or the sentence imposed. Mendiola filed an application for post-conviction relief, claiming that his guilty plea was not voluntarily made and that there was no factual basis for the guilty plea. Also, Mendiola argued that his counsel was ineffective for failing to contest the district court's conclusion that there was a factual basis for his plea and for failing to present mitigating evidence at sentencing. After an evidentiary hearing on all of Mendiola's claims, the district court dismissed Mendiola's application. Mendiola appeals.

## II.

## STANDARD OF REVIEW

An application for post-conviction relief initiates a proceeding that is civil in nature. *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State*, 92 Idaho 827, 830, 452 P.2d 54, 57 (1969); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the applicant must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19-4907; *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990).

---

[1]      *See North Carolina v. Alford*, 400 U.S. 25 (1970).

In order to prevail in a post-conviction proceeding, the applicant must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

## III.

## ANALYSIS

Mendiola asserts that the district court erred when it dismissed his application for post-conviction relief. Specifically, Mendiola argues that the district court's findings of fact regarding the voluntariness of his guilty plea and the factual basis for his plea were clearly erroneous. In addition, Mendiola asserts that the district court applied the incorrect legal standard when it determined that his guilty plea was voluntary. Mendiola also alleges that the district erred by denying his claims of ineffective assistance of counsel. The state responds that Mendiola's claims involving the guilty plea should have been raised on direct appeal and are therefore barred.

### A.     Application of the Uniform Post-Conviction Procedure Act

The state argues that Mendiola's claims involving his guilty plea are not properly before this Court on appeal. Specifically, the state asserts that these claims are barred because Mendiola's requested relief is based solely on a transcript of proceedings before the district court below and because Mendiola has not presented any new or additional evidence. In other words, the state argues that these claims should have been raised on direct appeal.

Under the Uniform Post-Conviction Procedure Act, post-conviction relief is available where "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." I.C. § 19-4901(a)(4). An application for post-conviction relief is not a substitute for an appeal. I.C. § 19-4901(b). A claim or issue which was or could have been raised on appeal may not be considered in post-

conviction proceedings. *Id.; Whitehawk v. State*, 116 Idaho 831, 832-33, 780 P.2d 153, 154-55 (Ct. App. 1989).

In support of its argument, the state relies in part on *Ricca v. State*, 124 Idaho 894, 865 P.2d 985 (Ct. App. 1993). In that case, this Court held that a defendant may challenge the validity of a guilty plea during post-conviction proceedings so long as the defendant failed to file a motion to withdraw guilty plea below. *Id.* at 896-97, 865 P.2d at 987-88. In *Ricca*, the defendant alleged that his plea was involuntary because he was under the influence of medication at the time of his guilty plea and that medical treatment was withheld from him until after he had consented to enter his guilty plea. This Court held that Ricca's application for post-conviction relief was his first challenge to the validity of his guilty plea. *Id.* This Court further held that, because Ricca had not filed a direct appeal or a motion to withdraw his guilty plea below, he was permitted to assert those claims for the first time in his application. *Id.*

In this case, Mendiola's application sought vacation of his judgment of conviction and the sentence imposed. Specifically, Mendiola argued that his guilty plea was not voluntary and should be set aside because there was no factual basis for his plea and because he was coerced by the terms of his plea agreement, which provided for reduced criminal charges for his brothers and no charges at all for his sisters. Similar to the defendant in *Ricca*, Mendiola did not file a direct appeal or challenge the validity of his plea on a motion to withdraw his guilty plea. As such, these claims were not previously presented or heard. While Mendiola's application did not specifically seek to withdraw his guilty plea, the circumstances of this case are similar to *Ricca* because Mendiola alleged that his plea was involuntary and requested that his plea be set aside. In addition, during the evidentiary hearing, counsel for both the state and Mendiola referred to Mendiola as being able to withdraw his plea if he prevailed on his application.

Further, while the state argues that Mendiola presented no new evidence in support of his claims, trial counsel's testimony at the evidentiary hearing provided additional information that was not presented to the district court below. For example, trial counsel further explained what he meant when he stipulated that the grand jury testimony provided a factual basis for Mendiola's plea. Accordingly, Mendiola was not barred from raising claims challenging the validity of his guilty plea in his application for post-conviction relief. Therefore, the district court did not err in determining that Mendiola's claims regarding his guilty plea were properly before the district court.

4

**B.      Voluntariness of Guilty Plea**

Mendiola argues that the district court erred by finding that Mendiola was not credible when he stated at his guilty plea hearing that the only reason he was pleading guilty was to spare his siblings from criminal charges. Mendiola also asserts that the district court applied the wrong legal standard when it determined that Mendiola's guilty plea was voluntary.

Mendiola contends that the district court's finding that Mendiola was not credible was clearly erroneous because he repeatedly asserted that the only reason he was pleading guilty was to shield his brothers and sisters from criminal prosecution. Mendiola is correct that he asserted such a claim at the guilty plea hearing, at sentencing, and throughout proceedings on his application for post-conviction relief. However, as stated above, the credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are matters solely within the province of the district court. *Larkin*, 115 Idaho at 73, 764 P.2d at 440. In exchange for Mendiola's guilty plea, the state agreed to dismiss numerous felony charges against Mendiola, including charges of robbery, kidnapping, and first degree murder, which demonstrates that Mendiola received a substantial benefit for his guilty plea. The district court's findings were not clearly erroneous.

Mendiola also argues that the district court erred by applying an incorrect legal standard when determining that Mendiola's plea was voluntary. Specifically, Mendiola argues that the district court should have applied the standard established by this Court in *Mata v. State*, 124 Idaho 588, 861 P.2d 1253 (Ct. App. 1993). Mendiola asserts that his "package" plea deal, which involved sparing his siblings from prosecution, was coercive under *Mata*. Mendiola contends his plea was not voluntarily made.

As mentioned above, we freely review the district court's application of the law. *Nellsch*, 122 Idaho at 434, 835 P.2d at 669. In its order dismissing Mendiola's application for post-conviction relief, the district court referred to two standards for examining whether a "package" plea deal is coercive. The first was based on federal circuit court of appeals decisions, which have held that package plea deals are not impermissible, but that special care must be taken in reviewing guilty pleas entered in exchange for a prosecutor's promise of lenient treatment of a third party. *See United States v. Carr*, 80 F.3d 413, 416-17 (10th Cir. 1996); *Politte v. United*

5

*States*, 852 F.2d 924, 929-30 & n.13 (7th Cir. 1988); *United States v. Wheat*, 813 F.2d 1399, 1405 (9th Cir. 1987). The other standard was established by the California Supreme Court in *In re Ibarra*, 666 P.2d 980, 986-87 (Cal. 1983). In this case, the district court applied the seven-factor test set out in *Ibarra* and concluded that Mendiola's package plea deal was not coercive. In its decision, the district court correctly stated that Idaho appellate courts have not adopted the standard set out in *Ibarra*. However, Mendiola is correct that, in *Mata*, this Court adopted the federal standard mentioned above. While the district court in this case did not specifically cite to *Mata* in making its decision, it referred to one of the cases that this Court relied on in reaching its conclusion in *Mata* and described the same "special care" standard applicable to such package plea deals. *See Politte*, 852 F.2d at 929-30 & n.13.

In the *Mata* case, Mata and his wife were arrested and charged with grand theft. In exchange for Mata's guilty plea, the state agreed to dismiss the charges against his wife and recommend restitution and probation at sentencing. At sentencing, Mata requested to change his plea, due in part to the extreme pressure he felt to plead guilty. Specifically, Mata asserted that he was concerned about his wife's incarceration and for his children who were in foster care. The district court denied Mata's request to withdraw his guilty plea and Mata appealed. Following a review of state and federal cases involving package plea deals, this Court concluded that, while courts have recognized the inherent dangers to third-party plea negotiations, courts have been unwilling to upset the bargained-for result of the plea agreement where the state's inclusion of the third party was done in good faith. *Mata*, 124 Idaho at 594-95, 861 P.2d at 1259-60. This Court then determined that the anxiety and pressure generated by Mata's family situation did not constitute impermissible coercion. *Id*. at 595, 861 P.2d at 1260.

Applying the *Mata* standard to the plea in this case, we are unable to conclude that Mendiola's plea deal was so coercive that it rendered his guilty plea involuntary. At the change of plea hearing, defense counsel and the state described in detail the contents of the plea agreement involving Mendiola, his brothers, and his sisters. Mendiola's brothers were initially charged with numerous felonies. The plea agreement provided that the state would dismiss the felonies, charge each brother with one count of accessory to a felony, and recommend sentences of two years and retained jurisdiction. In addition, the state agreed to work with federal

6

authorities in order to ensure that Mendiola's sisters were not charged with any crime.[2] The district court inquired of specific promises made to Mendiola other than those contained in the plea agreement. Mendiola responded that there were no physical threats made to him, but that he was trying to salvage what was left of his family. The district court inquired further about specific threats made, and Mendiola responded that he did not want to deprive his brothers' children of their fathers. However, Mendiola also stated that he was making a fully-informed decision and that he agreed with the plea agreement but wanted to put on the record that he was pleading guilty for his family.

Similar to the circumstances in *Mata*, the anxiety and pressure generated by Mendiola's family situation did not constitute impermissible coercion. The district court took special care to ensure that no specific threats were made against Mendiola in order to coerce him to plead guilty. The district court followed up with Mendiola after he responded that threats were being made against his family. In addition, it appears from the record that the inclusion of Mendiola's brothers and sisters in the plea deal was done in good faith. Grand jury testimony implicated the brothers in a robbery and kidnapping and at least one of the brothers was present at the time of the murder. Further, grand jury testimony indicated that the victim's car was stored at Mendiola's sisters' house in Seattle after the murder and that it was found by police near the sisters' home soon after the victim's body was discovered. Therefore, Mendiola has failed to establish by a preponderance of the evidence that the district court erred when it determined that Mendiola's plea was voluntary.

## C.    Factual Basis for Guilty Plea

In his application for post-conviction relief, Mendiola argued that the district court erred by accepting his plea at the plea hearing without a factual basis. In its order denying Mendiola's application for post-conviction relief, the district court concluded that the evidence before the district court at the guilty plea hearing was sufficient to provide a factual basis for Mendiola's

---

[2]    Mendiola asserts that the state threatened prosecution of Mendiola's sisters without probable cause. The details of the plea deal as it related to charges against Mendiola's sisters are not contained in the record. Grand jury testimony indicated that Mendiola's sisters lived in Seattle and that Mendiola drove the victim's car to Seattle after the murder and stayed with his sisters prior to his arrest. The sisters could not have been prosecuted by the State of Idaho for any crimes that may have occurred in the State of Washington. However, while it was never revealed which charges could have been brought against the sisters, Mendiola's trial counsel indicated that the United States attorney was not interested in pursing a federal prosecution.

7

guilty plea. Mendiola argues that the district court's conclusion was clearly erroneous because trial counsel's statement at the plea hearing was not sufficient to establish a factual basis for the *Alford* plea and because the district court failed to read the grand jury transcript prior to accepting Mendiola's plea.

In the case of an *Alford* plea, an accused may consent to the imposition of a prison sentence despite professing his or her innocence as long as a factual basis for the plea is demonstrated by the state and the defendant expresses a desire to enter such a plea. *State v. Ramirez*, 122 Idaho 830, 834, 839 P.2d 1244, 1248 (Ct. App. 1992); *Amerson v. State*, 119 Idaho 994, 996, 812 P.2d 301, 303 (Ct. App. 1991). In this case, the district court accurately stated that a factual basis was required prior to accepting Mendiola's guilty plea. Much has been made of the following exchange between trial counsel and the district court at the change of plea hearing:

| THE COURT: | I have been presented with a copy of the preliminary hearing transcript, but I have not read it because there has been no motions that have been scheduled that were immediately pending before the Court, and so since this is an [*Alford*] plea, I need to ask [the prosecutor] or [trial counsel] the factual record that would establish this charge. |
| --- | --- |
| [TRIAL COUNSEL]: | Well, Judge, I would stipulate that the grand jury transcript establishes probable cause for the Amended Indictment. |
| THE COURT: | Okay. Do you agree with that statement, [prosecutor]? |
| [PROSECUTOR]: | Yes, Your honor. |
| THE COURT: | I find then that there is a factual predicate for the charge made in the Amended Indictment and order the Amended Indictment be filed and I will accept the plea of guilty of Mr. Giovanni Mendiola and order it be entered of record. |

We note that there was no preliminary hearing in this case and, presumably, the district court was referring to the grand jury transcript. Mendiola argues that the district court erred by accepting these statements as the factual basis for Mendiola's guilty plea However, later on in the hearing, the following exchange occurred between the district court and the state:

| THE COURT: | Anything else that we need to take up in Mr. Giovanni Mendiola's case, [prosecutor]? |
| --- | --- |
| [PROSECUTOR]: | No, Your honor. I just wanted to clarify on the [*Alford*] plea I know counsel stipulated to the grand |

8

jury transcript, but I just want to state for the record that the State would be able to provide the -- prove each and every element to second degree murder to which the defendant has pled which is also the basis of the grand jury transcript, so I just want to say that for the record that we are prepared to prove each and every element of the crime to which he's pled guilty beyond a reasonable doubt.

At the evidentiary hearing, trial counsel testified that it was not his intention to provide a factual basis for Mendiola's guilty plea when he stated, "I would stipulate that the grand jury transcript establishes probable cause for the Amended Indictment." However, while the district court and counsel did not specifically say the words "factual basis" when determining whether or not to accept Mendiola's *Alford* plea, the statements the court and counsel made referring to facts establishing the charge are sufficient to demonstrate that the court was referring to a factual basis for the guilty plea. Further, the state made clear during the change of plea hearing that it could prove beyond a reasonable doubt each of the elements of second degree murder. In determining whether a factual basis for a guilty plea exists, we look to the entire record before the trial court at the time the plea was accepted. *Ramirez,* 122 Idaho at 834, 839 P.2d at 1248; *Fowler v. State,* 109 Idaho 1002, 1005, 712 P.2d 703, 706 (Ct. App. 1985).

Mendiola argues that the district court admitted to failing to read the grand jury transcript and, as such, the court could not have relied on it as a factual basis for Mendiola's guilty plea. However, both the state and defense counsel referred to the grand jury transcript as providing the factual basis for the charge of second degree murder. In addition, the grand jury transcript was available to the district court for review at the time Mendiola entered his guilty plea. The evidence presented to the grand jury included testimony describing the circumstances leading up to the murder, the murder itself, and Mendiola's conduct afterward. Two witnesses testified before the grand jury that Mendiola admitted to killing the victim by stabbing the victim in the throat. One grand jury witness testified that Mendiola admitted to strangling and squeezing the victim's neck so tightly that blood came out of the victim's mouth and nose. That same witness also testified that, after the murder, Mendiola stole marijuana from the victim's residence in order to sell it and drove the victim's car to his sisters' home in Seattle. In addition, a police officer testified that the victim's body was found on a steep, wooded embankment off of a secluded road approximately one month after the victim went missing. The officer further

9

testified that the body appeared to have been dragged to the spot where it was found. Such evidence provides a factual basis for Mendiola's guilty plea to second degree murder. While Mendiola argues that no factual basis for the element of malice was presented to the district court, evidence of Mendiola's malice was demonstrated by the grand jury testimony mentioned above. As such, the district court did not err in finding that there was a factual basis for Mendiola's plea.

**D.     Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State*, 121 Idaho 918, 924-25, 828 P.2d 1323, 1329-30 (Ct. App. 1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). Where, as here, the defendant was convicted upon a guilty plea, to satisfy the prejudice element, the claimant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994).

Mendiola claims that his counsel was ineffective for failing to challenge the lack of a factual basis in support of his guilty plea at the change of plea hearing and for failing to present mitigating evidence at sentencing to demonstrate that Mendiola lacked malice when he murdered the victim. As discussed in the previous section, the grand jury testimony created a factual basis for Mendiola's guilty plea. Therefore, Mendiola has failed to show how his counsel was deficient by failing to object on that basis.

Mendiola claimed for the first time at sentencing that he killed the victim in self-defense. In his application, Mendiola argued that his trial counsel was ineffective for failing to present

eyewitness testimony and evidence at sentencing that the victim was under the influence of drugs and had threatened Mendiola with a gun. In support of this assertion, Mendiola attached to his application an affidavit from one of the men who were present at the time of the murder and a copy of the autopsy report. Mendiola asserted that this evidence established that he killed the victim in self-defense. However, during proceedings on the application, the district court concluded that Mendiola's claims of self-defense were not credible. As noted previously, the credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin*, 115 Idaho at 73, 764 P.2d at 440.

Specifically, the district court found that Mendiola's statements of self-defense at sentencing were unsworn. As a result, the district court did not give those statements as much weight as sworn grand jury testimony. The district court found that the grand jury testimony regarding Mendiola's actions after the murder contradicted the behavior of a person who had killed someone in self-defense. As mentioned above, grand jury testimony illustrated that Mendiola admitted to two grand jury witnesses that he strangled and stabbed the victim. The testimony also indicated that Mendiola left the victim's body on a wooded embankment, stole the victim's car, broke into the victim's home to steal marijuana, and failed to contact police. In addition, it appears from the witness affidavit attached to Mendiola's application that the witness did not actually observe the victim with a gun, nor did he see the victim threaten Mendiola. The autopsy report attached to Mendiola's application indicated that the victim had drugs and alcohol in his system when he died. However, neither the affidavit nor the autopsy report supports a reasonable probability that Mendiola killed the victim in self-defense. As such, the district court's findings of fact regarding Mendiola's claim of self-defense were not erroneous. Therefore, because the district court determined that evidence in support of Mendiola's claim of self-defense was not credible and was contradicted by the grand jury testimony, Mendiola was not prejudiced by trial counsel's failure to present such evidence at sentencing.

## IV.

## CONCLUSION

Mendiola has failed to show that the district court's findings were clearly erroneous. Specifically, the district court did not err by finding that Mendiola's guilty plea was voluntarily made and that there was a factual basis for the guilty plea. In addition, Mendiola has failed to

show that the district court erred by determining that trial counsel did not provide ineffective assistance of counsel. Therefore, the district court's order denying Mendiola's application for post-conviction relief is affirmed. No costs or attorney fees are awarded on appeal.

Judge GUTIERREZ and Judge GRATTON, **CONCUR.**