**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44982**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: August 27, 2018** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| KATIE JO MEYER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy Baskin, District Judge.

Appeal from order revoking and reinstating probation, <u>dismissed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kim A. Coster, Deputy Appellate Public Defender, Boise, for appellant. Lara Anderson argued.

Hon. Lawrence G. Wasden, Attorney General; Jeffery D. Nye, Deputy Attorney General, Boise, for respondent. Jeffery Nye argued.

---

HUSKEY, Judge

Katie Jo Meyer appeals from the district court's order revoking and reinstating probation. Meyer argues the district court abused its discretion by employing a substantial evidence standard to find Meyer willfully violated her probation, amounting to a denial of Meyer's due process rights. Because we conclude this appeal is moot, this appeal is dismissed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

After pleading guilty to felony possession of a controlled substance, Idaho Code § 37-2732(c), Meyer received a unified seven-year sentence, with one and one-half years determinate, which the district court suspended, placing Meyer on probation. A condition of Meyer's probation was that she "take all medication prescribed at the rate it is prescribed." Months later, Meyer's father, worried Meyer had stopped taking her medications, contacted Meyer's probation

1

officer and reported Meyer was behaving strangely, was angry, and had threatened her mother and sister. Meyer's father testified that in conversation with Meyer, she had acknowledged she was not taking her medications.

Meyer's probation officer met with Meyer the next day. Meyer's probation officer asked Meyer if she had been taking her medications. The probation officer testified that Meyer said she was not taking her medications because she felt she did not need them and "had no intention of taking them." Because Meyer was "mentally not coherent," exhibiting "some paranoia or hallucinations or delusions of some sort," the probation officer suggested Meyer check herself into a hospital. A few days later, Meyer was arrested pursuant to an agent's warrant for not taking her medications.

The State filed a motion for probation violation, alleging Meyer had failed to stay on her prescribed medications. At the probation violation hearing, the district court told Meyer "the burden is on the State to prove these probation violations by substantial evidence," a standard it reiterated later in the hearing. At no point did Meyer object to the district court's articulation of the State's evidentiary burden.

The district court found "the defendant clearly had admitted to her father and to her probation officer that she previously from approximately June [] of 2016 knew she was supposed to be on her meds and intentionally and willfully decided not to take her meds." The district court concluded "the State has produced substantial evidence that this defendant has violated condition one of failing to take your medications as prescribed and ordered by this Court." The district court found Meyer violated the terms of her probation, and the district court revoked her probation, but immediately reinstated probation with the same terms and conditions. Meyer timely appealed to this Court. After Meyer filed her notice of appeal, the district court found Meyer had again violated her probation, and once again the court immediately reinstated probation, but with an additional term to participate in a substance abuse program and a critical thinking class. Meyer did not appeal that judgment. Months later, the district court found Meyer, yet again, had violated her probation. The district court revoked Meyer's probation, executed her original sentence, and retained jurisdiction. Meyer also did not appeal that judgment.

## II.

## ANALYSIS

Meyer argues the district court abused its discretion by employing a substantial evidence standard to find she willfully violated her probation amounting to a denial of her due process rights. The State asserts the appeal is moot because Meyer was reinstated on probation, but even if not moot, Meyer cannot show fundamental error. Meyer, in her reply brief, alleges the appeal is not moot. We need not reach the merits of the State's fundamental error argument because we conclude this appeal is moot.

A case becomes moot when the issues presented are no longer live or the defendant lacks a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991). Even where a question is moot, there are three exceptions to the mootness doctrine: (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010). This Court may dismiss an appeal where it appears the appeal involves only a moot question. *State v. Manzanares*, 152 Idaho 410, 419, 272 P.3d 382, 391 (2012). "Justiciability issues, such as mootness, are freely reviewed." *Barclay*, 149 Idaho at 8, 232 P.3d at 329.

The State's primary argument is that the appeal is moot because it will not provide Meyer any relief. The State points out that as a result of Meyer's first probation violation, her probation was revoked and immediately reinstated upon the same terms. Thus, the State contends this appeal cannot restore Meyer's probationary status because the district court already reinstated Meyer's probation. Additionally, the State argues there are no collateral consequences that this appeal can remedy. The State contends the only imaginable collateral consequence that Meyer could identify is that her first probation violation disqualifies her from seeking relief under I.C. § 19-2604. Pursuant to I.C. § 19-2604(1)(b), a judge may reduce a felony conviction to a misdemeanor, as well as set aside a conviction altogether if certain conditions are met. I.C. § 19-2604(1)(b). The State argues that regardless of the outcome of this appeal, Meyer is not eligible to seek relief under that statute because of her additional probation violations. The State points to I.C. § 19-2604(1)(b)'s condition that the "court did not find, and the defendant did not admit,

in any probation violation proceeding that the defendant violated any of the terms or conditions of any probation."

Meyer argues her case is not moot because of the collateral consequences she faces as a result of her first probation violation. Meyer claims there are three possible lines of collateral consequences. First, Meyer claims she could seek relief under I.C. § 19-2604(1)-(2) if: (1) this Court vacates her first probation violation as a result of this appeal; and (2) the district court vacates her second and third probation violations if she files petitions for post-conviction relief and obtains relief on those petitions.[1] This scenario does not demonstrate there is a reasonable possibility of collateral legal consequences as a result of this conviction because of the multiple levels at which Meyer would have to obtain relief.

In this case, Meyer would have to convince this Court to set aside her first probation violation. After obtaining relief in this case, Meyer would also have to get her other probation violations set aside. Because Meyer did not directly appeal from those probation revocations, she would have to bring any claims regarding her second and third probation violations in post-conviction proceedings. However, Meyer's failure to file a direct appeal in those probation violations may result in a waiver of any issues regarding those violations in post-conviction proceedings. I.C. § 19-4901(b); *Mendiola v. State*, 150 Idaho 345, 348-49, 247 P.3d 210, 213-14 (Ct. App. 2010). Even if Meyer gets past that procedural bar, she would still have to establish that her attorney rendered deficient performance that resulted in prejudice in both cases. *See Strickland v. Washington*, 466 U.S. 668 (1984). The likelihood of prevailing on this appeal, overcoming the procedural bar, and obtaining relief in yet-unfiled post-conviction proceedings is highly speculative. Moreover, failure to obtain relief in any one of the cases renders Meyer ineligible for any relief pursuant to I.C. § 19-2604(1)(b). Thus, Meyer's assertion that the record of her first probation violation will deprive her of I.C. § 19-2604(1)(b) relief is too speculative to constitute a collateral consequence.

Second, Meyer claims that the record of her first probation violation will impair the strength of her plea for relief under I.C. § 19-2604(3), which she argues does not condition eligibility upon any of her probation violations. This subsection of the statute allows a defendant

---

[1] Although Meyer is time barred from appealing the judgments on either her second or third probation violations she may still file timely petitions for post-conviction relief. *See* I.C. § 19-4902.

to request their judgment be amended from a felony to a misdemeanor. I.C. § 19-2604(3). While it may be true that I.C. § 19-2604(3) does not condition eligibility for relief upon a defendant's lack of probation violations, the statute extends relief only to defendants who have "been discharged from probation," among other considerations. I.C. § 19-2604(3). Meyer has not been discharged from her probation. To the contrary, upon Meyer's third probation violation, her probation was revoked and her original sentence executed. Meyer is currently incarcerated for this conviction. To the extent Meyer is arguing she could in the future be placed back on probation and successfully complete probation so that she could be discharged from probation, that argument is unavailing because it is too speculative. Because Meyer cannot meet the requirements for relief under I.C. § 19-2604(3) regardless of whether she is successful in this appeal, the finding of a probation violation does not present a collateral consequence such that an exception to the mootness doctrine is warranted.

Third, Meyer claims that the record of her first probation violation will negatively influence any subsequent sentencing decision a judge may make in the underlying case or any other case in which she might find herself. Meyer argues that her first probation violation will be recorded in her criminal history and reported in any future presentence investigation reports. In this case, Meyer contends this will cause the district court to dole out a harsher punishment if she again violates her probation. For a future state or federal case, Meyer argues the record of her first probation violation will negatively impact a judge's sentencing decision.

In *Storm v. Spaulding*, 137 Idaho 145, 44 P.3d 1200 (Ct. App. 2002), this Court addressed a similar argument. There, Storm, an inmate with a medium custody classification, was reclassified to close custody as a result of misconduct, losing privileges and opportunities afforded in medium custody. *Id.* at 147, 44 P.3d at 1202. In his disciplinary hearing, Storm requested a continuance, which the hearing officer denied. After being moved to close custody, Storm filed a petition for a writ of habeas corpus, arguing the denial of the continuance was a violation of his due process rights. Storm requested he be restored to medium custody and to have his disciplinary record cleared. Before the district court made its ruling, Storm was reclassified to medium custody. The district court then found Storm's custody request was moot because Storm had been reclassified. *Id.*

On appeal, this Court held Storm's request that he be restored to medium custody was moot because it would not affect his current conditions of confinement. *Id.* at 148, 44 P.3d at

5

1203. However, this Court reasoned that the collateral consequence "that the disciplinary action will have a negative effect on the parole commission's view of [Storm's] suitability for parole," was sufficient to overcome mootness. *Id.* Proceeding to the question of whether Storm's due process rights were violated by the hearing commissioner's denial of the continuance, this Court noted the "myriad of considerations" that enter into a judge's decision to release an inmate on parole. *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 487 (1995)). Continuing, the Court noted the potential effect of a negative disciplinary finding on Storm's record was "simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.* In other words, because Storm's assertion that the record of his misconduct *may* impair his eligibility for parole was too speculative, this Court found Storm was not entitled to "the procedural protections of the Due Process Clause in the disciplinary hearing." *Id.* at 149, 44 P.3d at 1204.

While Meyer's case shares many of the features from *Storm*, it varies in at least one important regard: Meyer's case adds two separate and independent probation violations into the "myriad of considerations" for the district court, or any other future court, to review during the disposition phase of a probation violation hearing or at a sentencing hearing. Meyer's case also adds a period of retained jurisdiction that will weigh in the district court's consideration should Meyer again be placed on probation. Meyer provides no indication that the record of her second and third probation violations will not cause the same trouble as the first. Nor, as stated above, does Meyer make a showing that these additional probation violations will be vacated by future petitions for post-conviction relief.

Finally, Meyer does not address the potential future scenario in which this first probation violation would be relevant to a trial court. That scenario involves Meyer facing another sentencing decision, either after successfully completing the period of retained jurisdiction, being placed on probation, and violating the terms and conditions of probation, or being sentenced for a new crime. She has not explained why the finding of her first probation violation would carry as much or more weight than the fact that after successfully completing a period of retained jurisdiction, she again violated probation and/or committed a new crime. Because this Court will not speculate how, or if, a future court will consider the record of Meyer's first probation violation in the context of other factors, we conclude the possible negative influence of the record of Meyer's first probation violation is not sufficient to constitute an exception to the mootness doctrine.

6

Even if none of these collateral consequences are substantial enough to overcome this appeal's mootness, Meyer argues this Court should reach the merits of her appeal by an exercise of plenary appellate jurisdiction in order to clarify important points in the law concerning a probationer's due process rights. That power is reserved to the Idaho Supreme Court. IDAHO CONST. art. V, § 9. The Idaho Court of Appeals functions as an error-correcting court, accepting cases only as assigned by the Idaho Supreme Court. I.C. § 1-2406. Thus, this Court cannot exercise the jurisdiction Meyer requests.

Because Meyer has failed to prove an exception to the mootness doctrine, we conclude this appeal is moot. Thus, we do not reach the merits of Meyer's argument that the district court's use of the substantial evidence standard violated Meyer's right to due process.

### III.

### CONCLUSION

Having concluded Meyer's arguments fail to prove an exception to the mootness doctrine, Meyer's appeal from the district court's order revoking and reinstating probation is dismissed as moot.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.

7