IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 48721

ROY BRACKEN, an individual; RRJ LLC,
an Idaho limited liability company; and
PENGUIN LLC, an Idaho limited liability
company,

   Plaintiffs-Appellants,

v.

CITY OF KETCHUM, IDAHO an Idaho
municipal corporation; MICAH AUSTIN,
an individual, SUZANNE FRICK, an
individual, and NINA JONAS, an individual,

   Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, November 2022 Term

Opinion filed: September 15, 2023

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Jonathan Brody, District Judge.

The district court's decision is <u>affirmed in part</u>, <u>reversed in part</u>, and <u>remanded</u>.

Robert J. Elgee, and Alturas Law Group, LLC, Hailey, attorneys for Appellants. Robert J. Elgee argued.

White, Peterson, Gigray & Nichols, P.A., Nampa, attorneys for Respondents. Matthew A. Johnson argued.

———————————————————

BEVAN, Chief Justice.

   This appeal is about whether an aggrieved applicant may bring a direct action against a city, its administrators, and its mayor for alleged misconduct pertaining to the granting of a conditional use permit without first exhausting administrative remedies and seeking judicial review. The answer is almost always "no," but based on the unique facts in this case we hold that the applicant was excused from exhausting administrative remedies.

## I. FACTUAL AND PROCEDURAL BACKGROUND

   The factual background and procedural history of this case are complex, but the relevant facts are not in dispute. On April 29, 2016, Roy Bracken applied for a conditional use permit to

1

operate a gas station off Main Street in Ketchum, Idaho. Bracken had secured an option on the property where he wished to locate the gas station. When Bracken filed his application, gas stations were permitted at the site under Ketchum's applicable zoning laws. While Bracken's application was pending, the City of Ketchum, through its mayor Nina Jonas, commissioned an online public survey for opinions about whether a gas station should be permitted at the proposed site. The results of the survey were introduced at a public hearing before the Ketchum Planning and Zoning Commission (the "P&Z Commission") on July 9, 2016. According to Steve Cook, an architect in Ketchum since 1972, who also served on the P&Z Commission for almost nine years, the survey was unprecedented. Also, at some unknown time during the application process, Mayor Jonas, City Administrator Suzanne Frick, and former Sun Valley Mayor Ruth Lieder attended a dinner at Barbi Reed's house. Reed lived across from the proposed site and was the chairperson of a group called the "Citizens Against Bracken Station." Frick admitted that the meeting was "about [Bracken's] application."

Bracken's first application was ultimately denied based on the possibility of a traffic flow problem. Rather than appeal the denial of his first application, Bracken revised his application, and nearly one year later, on April 10, 2017, he presented a second application and site plan that was redesigned to address the concerns raised about his first application. Bracken presented the second application to Micah Austin—the Ketchum Planning Director and Zoning Administrator. Austin denied Bracken's application, claiming that it was the same, or substantially the same, as Bracken's earlier application.

On May 8, 2017, Bracken appealed Austin's rejection of his second application to the P&Z Commission, which orally reversed Austin's decision at a hearing on June 8, 2017. Before a written decision was entered, Bracken resubmitted the second application to Austin on June 19, 2017, along with the appropriate plans and payments. Austin rejected the application as untimely because: (1) the P&Z Commission had not entered a final written decision, and (2) upon preliminary review, Planning and Building Staff advised that the application was incomplete and missing required information. Austin physically returned the application to Bracken.

Around this time, Austin—in collaboration with the Ketchum City Council, Frick and Mayor Jonas—decided the previous traffic study Bracken submitted could not be used because his engineer had not used a valid Idaho engineer stamp. Austin emailed Bracken, stating that any application submitted must include not only the application and application fee, but also several

2

new requirements: (1) a site plan, (2) a new traffic study from someone other than Bracken's original engineering firm, (3) circulation plans and exhibits, (4) a lighting plan, (5) a photometric plan, (6) a letter from the Idaho Transportation Department stating the proposal complied with certain standards, (7) a draining plan, and (8) a landscaping plan. None of these added items were required by the applicable Ketchum Municipal Code.

In the interim, between the P&Z Commission's oral decision and the written decision it entered on July 7, 2017, the City passed a new ordinance prohibiting gas stations from accessing Main Street in Ketchum. The ordinance's adoption was unusually expedited. At one point in the hearing on the proposed ordinance, a councilman asked Austin, "My question is directed at Micah [Austin] and why is there a sense of urgency for passing this . . . P&Z should just do their job. I don't think the sense of urgency should come from us, P&Z doesn't think this is appropriate, because it sure sounds to me like passing three readings is going after one person. So tell me why I'm not doing that." Austin replied:

> Sure, I'd be happy to explain that. In the State of Idaho an applicant's rights are vested at the time an application is accepted by the city and so if that application is submitted when a certain ordinance is on the books their rights are vested according to that ordinance that is on the books. When we presented this amendment to the P&Z Commission on April 10, that same day the applicant for the Bracken station submitted another application on April 10 that very morning. We rejected that because the code says you can't resubmit for a denied conditional use permit within 12 months. They appealed my decision to deny that application and the Planning and Zoning Commission overturned my decision and found that the application that was submitted on April 10th was a brand-new application never-before-seen in the City of Ketchum and that it was substantially different. According to that ruling, then they had to submit findings of fact no later than July 8th. After July 8th, that applicant, assuming we get the findings out, after July 8th, that applicant for Bracken station can resubmit that "new application" and their rights will be vested under whatever ordinance is on the books at the time.
>
> We have a special meeting on this Friday at 4 o'clock to approve those findings and it's up to the Commission to approve those findings at that time, but the reason we are recommending the waiver of those 2nd and 3rd readings is because we don't believe that application reflects the community's values. And we do believe there is a sense of urgency and that we have been through this, like I've mentioned, over seven months last year and with the P&Z Commission, and, quite frankly, we don't believe that it would do the applicant service, the community, or staff to accept a new application while we have an ordinance on this and before you all that everyone agrees on. So, yes, there is a sense of urgency, and yes, there is no question about it. We are concerned about a single application coming in and tying

3

up city staff and the community for months and months and months which is what we know is not what the community wants.[1]

The Ketchum City Council ultimately voted to waive the usual second and third readings of the proposed ordinance and adopted it immediately at the hearing on July 3, 2017.

As noted above, the P&Z Commission issued its written decision on July 7, 2017, holding that Bracken's second application was substantially and materially different from his first application, and ordering "the Administrator [Austin] receive and review the Second Application for completeness, and upon determination that such is complete, initiate the typical [conditional use permit] application review process set forth in Ketchum Municipal Code and pursuant to the Idaho Local Land Use Planning Act." On that same day, the City published the newly adopted ordinance in the Idaho Mountain Express and Guide. Ketchum Municipal Code section 1.20.010 designates the Idaho Mountain Express as Ketchum's official paper for publication, not the Idaho Mountain Express and Guide.

On July 7, 2017, Bracken talked to Austin about his second application. Although the ordinance had not yet been published in the City's official paper, Austin told Bracken that a city ordinance prohibiting gas stations on Main Street had just been published. But the ordinance was not published in the official paper, the Idaho Mountain Express, until five days later, on July 12, 2017. Respondents took no further steps to review Bracken's second application.

On December 11, 2017, Bracken hand delivered a letter to Austin reciting the P&Z Commission's order that directed Austin to "receive and review" his second application. Bracken critiqued Austin's handling of the second application, provided another check for the application fee, and made a formal request for the City to process his application and initiate the typical conditional use permit process. Austin stated that the new law dictated that there would be no gas stations on Main Street, emphasizing that the redesigned and appealed application was never accepted. Austin informed Bracken that, in his view, no application had been submitted because

---

[1] A copy of the transcript from the July 3, 2017, hearing was not in the record on appeal. But Ketchum City Council meetings are public events, are video recorded, and are available online by visiting the City of Ketchum website at https://www.ketchumidaho.org/citycouncil/page/city-council-regular-meeting-59. Because the information is publicly available and not disputed by Respondents, this Court takes judicial notice of the quoted exchange pursuant to Idaho Rule of Evidence 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

that would require action on the City's part and there was no action taken by the City. Austin stated refiling was not an option because "they had been careful about not keeping anything here."

When Bracken submitted his identical copy of the appealed application for filing on December 13, 2019, Austin again refused to accept it. The return of Bracken's applications was known and approved by Mayor Jonas. In fact, Jonas admitted at one point that she instructed Austin to return one of the applications based on Austin's belief that the application was incomplete.

Five days after the final rejection of his second application, Bracken filed a 14-page notice of tort claim with the City Clerk. Following the City's refusal to process his second application even after he filed his tort claim, Bracken let his option to purchase the Main Street property expire.

On June 5, 2019, Bracken filed a complaint against Austin, Frick, Jonas, and the City ("Respondents") that set forth eight causes of action: (1) negligence in operational functions; (2) gross negligence; (3) reckless, willful, and wanton conduct in refusing to accept the application; (4) acceptance of benefits/ratification of actions of employees; (5) a claim for declaratory judgment seeking a declaration that the Ketchum city ordinance was invalidly enacted; (6) a claim for declaratory judgment seeking a declaration that Ketchum's ordinance was illegal spot zoning; (7) damages under 42 U.S.C. section 1983; and (8) a claim against the City of Ketchum for violating 42 U.S.C. section 1983. The lawsuit was based on the extraordinary difficulties encountered in Bracken's attempts to apply for a conditional use permit from the City of Ketchum. Bracken requested the following relief: special damages of at least $206,000, compensatory damages for lost profits and income in an amount to be proven at trial, but asserting annual losses more than $299,000, declaratory judgment that the ordinance passed by the City of Ketchum was void due to defects in the ordinance enactment process, and attorney fees and costs under 42 U.S.C. section 1988.

Respondents filed an answer that asserted five affirmative defenses, including: (1) failure to state a claim upon which relief could be granted; (2) Bracken's action was premature and not ripe for adjudication; (3) Bracken's action was barred by the governmental immunity provisions in the Idaho Tort Claims Act; (4) Bracken failed to exhaust administrative remedies; and (5) Bracken's attempts to resubmit the permit application were barred by city ordinances.

Respondents later moved for partial summary judgment on Count One (negligence), Count Two (gross negligence), Count Five (declaratory judgment on the validity of the Ketchum

5

ordinance), and Count Eight (liability under 42 U.S.C. section 1983). The parties separately agreed to dismiss Count Six (declaratory judgment on spot zoning).

The district court entered a memorandum decision granting Respondents' motion for partial summary judgment, dismissing Counts One and Two, the negligence and gross negligence claims, after concluding they were barred by the economic loss doctrine. The court also granted declaratory judgment as to the validity of the ordinance (Count Five), and held the ordinance became valid on July 12, 2017. The court denied summary judgment on Count Eight, allowing Bracken's claims under 42 U.S.C. section 1983 to proceed. The court recited Bracken's allegations that the City's actions amounted to willful disregard of the City's legal responsibilities, a "conscious disregard of law and fact" resulting in a purposeful deprivation of constitutional rights. As a result, the court determined there were issues of material fact over the possibility of municipal liability under 42 U.S.C. section 1983.

Respondents later filed a second motion for summary judgment on Count Three (reckless, willful, and wanton conduct) for failure to state a claim recognized by Idaho law and Count Four (acceptance of benefits/ratification of actions of employees), asserting that it was barred by statutory immunity.

While Respondents' second motion for summary judgment was pending, Bracken filed a first amended complaint that added a claim for punitive damages related to his 42 U.S.C. section 1983 claims. Respondents answered Bracken's first amended complaint, adding two new affirmative defenses: (1) that the district court lacked subject matter jurisdiction over some or all of Bracken's claims, and (2) that Bracken failed to mitigate damages.

The district court entered a memorandum decision granting Respondents' second motion for summary judgment. The court dismissed Count Three after finding it did not allege an independent cause of action. That said, the court declined to strike Count Three from the complaint and allowed Bracken to reference it as a factual allegation that could support other cognizable causes of action. Next, the court dismissed Count Four after holding it was barred by statutory immunity. The court recognized the claim arose from the City's failure to issue a permit or similar authorization. Because governmental entities have absolute immunity under these circumstances, the court granted summary judgment on Count Four.

In January 2020, Bracken filed his own motion for summary judgment, ostensibly seeking rulings on twelve legal questions.[2] The district court entered its decision on Bracken's motion six months later, declining to enter the rulings Bracken requested based on its finding that "summary judgment [was] procedurally improper due to lack of clarity as to how the twelve issues presented relate[d] to the claims in [Bracken's] complaint." The court recognized that the issues had some relevance to Bracken's position, but determined it was unclear how Bracken was trying to connect those issues to the claims presented, noting that some issues seemed more appropriate as independent claims which would need to be raised in the complaint.

After Bracken's motion for summary judgment was denied, Respondents filed a third motion for summary judgment on Bracken's remaining claims, Counts Seven and Eight (42 U.S.C. section 1983 claims), on constitutional ripeness grounds. Respondents also sought summary judgment on Count Nine (punitive damages) on liability grounds.

While the Respondents' third motion for summary judgment was pending, Bracken filed a motion for rulings on issues of law and a subsequent motion for summary judgment. Bracken's motion included eighteen propositions of law for the district court to rule on and argued that under Idaho Code section 9-102 the court had a statutory duty to decide the issues "when submitted." Bracken summarized the eighteen motions as, among other things, breaking down "what Austin did into discrete and different acts," such as removing public records, defying P&Z orders, and making up fabricated requirements. Bracken argued the point of his eighteen motions was to get

---

[2] Bracken's brief in support of the motion for summary judgment was not included as part of the record, so the full extent of Bracken's argument is unclear. The district court summarized Bracken's request as asking the court to make these rulings and findings: (1) The filing and processing of a conditional use permit application is an operational function that involves ministerial duties and is not a discretionary function; (2) The City assumed a duty by enacting KCO 17.116.040(A) to take reasonable steps to process Bracken's application in due course, safeguard said application, and do so in a non-negligent manner; (3) Bracken's Second Application was complete and properly submitted on April 10, 2017, because it met all the filing requirements in KCO 17.116.040(A); (4) The defendants lacked the authority to add any new filing requirements for Bracken's Second Application; (5) Bracken's April 10, 2017, application rights vested on April 10, 2017, which was known by the individual defendants; (6) The City had no legal basis to return Bracken's June 19, 2017, submission of his April 10, 2017, [application]; (7) The June 19, 2017, resubmission of Bracken's Second Application was timely, and Bracken should have received his April 10, 2017, application date; (8) The City had no legal basis to reject Bracken's July 7, 2017, verbal submission or his December 11, 2017, and December 13, 2017, submissions of his Second Application; (9) The notice of tort claim filed on December 17, 2017, put Ketchum on notice that they were proceeding in the face of a known risk; (10) Except for Bracken's April 10, 2017, application, none of the rejections to file Bracken's April 10, 2017, application by Austin were "decisions" subject to appeal or administrative review; (11) [Bracken has] made out a prima facie case that the defendants acted intentionally, willfully, and wantonly or recklessly such that the $500,000 statutory limitation on tort claims does not apply; and (12) [The defendants] have failed to assert any arguments or facts that support their affirmative defenses.

the district court to the ultimate conclusion that Austin acted repeatedly without authority in refusing to accept Bracken's application.

Bracken's motion for rulings on issues of law also sought summary judgment against two of Respondents' affirmative defenses: (1) failure to exhaust administrative remedies; and (2) that Bracken's attempts to resubmit the permit application were barred by city ordinance. Bracken also moved for summary judgment "on the issue of whether defendants injured and interfered with a valuable property right when they refused to accept, process, or hold a hearing on Bracken's Second Application as required by law."

While the cross-motions for summary judgment were pending, the district court granted Bracken's motion for leave to file a second amended complaint. On October 2, 2020, Bracken filed his second amended complaint to add these allegations to Count Three:

> Individual defendants Micah Austin, Suzanne Frick, and/or Nina Jonas had a duty existing by virtue of Idaho state law [including I.C. [§§] 67-6519(1) and (2)] and Ketchum's municipal code (Chapter 17.116) to timely accept and/or process Bracken's Second Application for a conditional use permit, and/or submit the application to the Planning and Zoning Commission for proper processing. These individual defendants either individually or collectively refused to perform or comply with this legal duty. The failure to comply with this duty was not the product of accident or simple negligence but was carried out willingly and purposefully and intentionally.

(Alterations in original). Bracken also added Count Ten, a claim for intentional interference with economic expectancy against all defendants.

In December 2020, the district court granted Respondents' third motion for summary judgment and dismissed Counts Seven, Eight and Nine. The district court determined Bracken did not have a constitutional right in a conditional use permit or the procedures in obtaining such a permit, and therefore did not have a viable 42 U.S.C. section 1983 claim. The district court also held Bracken's 42 U.S.C. section 1983 claims were not ripe since administrative remedies available to Bracken were not exhausted before bringing the complaint. Because Counts Seven and Eight were decided on summary judgment, the court held there was no liability for which to attach punitive damages under 42 U.S.C. section 1983 and dismissed Count Nine.

On that same day, the district court entered a memorandum decision denying Bracken's motion for rulings of law and subsequent motion for summary judgment. The court acknowledged the procedural posture of the case, noting that although Bracken's second amended complaint had alleged ten counts against Respondents, Counts One, Two, Four, Five, Six, Seven, Eight, and Nine

8

had all been dismissed in previous summary judgment decisions. The district court then held Bracken's claims were barred because he failed to exhaust administrative remedies and did not provide sufficient evidence that exhaustion of remedies was excused. The court determined that because administrative remedies were not exhausted, it had no jurisdiction over any state law claims related to Respondents' actions towards Bracken's applications. And the district court held it was procedurally improper to determine a motion for rulings on issues of law before a trial began. Bracken had suggested that Idaho Code section 9-102[3] required the court to decide the legal issues "when submitted." The district court disagreed, concluding instead that the statute's use of the phrase "upon the trial" meant the court had to decide the issues when the trial commenced. The court ultimately denied Bracken's request after determining Bracken had failed to explain or cite any authority to support why his motion was proper at that point in the proceedings.

Bracken filed a motion for reconsideration. The district court denied Bracken's motion, reasoning "the law is clear. The overall trend in the law is clear that these decisions are really geared for local administrative review and then judicial review of that and not tort claims." On the same day, the district court entered a judgment.

Respondents moved for $204,256.13 for attorney fees and costs. Bracken moved to disallow the application for costs and attorney fees. The district court denied the Respondents' request for attorney fees but granted discretionary costs. The court found that Respondents were entitled to discretionary costs because such costs were necessary and exceptional since Bracken's claims lacked any legal merit. The court denied the Respondents' request for attorney fees based on its determination that they failed to apportion fees under the appropriate and controlling statutes. Bracken filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

This Court employs the same standard as the district court when reviewing rulings on summary judgment motions. *Jones v. Lynn*, 169 Idaho 545, 551, 498 P.3d 1174, 1180 (2021) (citing *Owen v. Smith*, 168 Idaho 633, 640–41, 485 P.3d 129, 136–37 (2021)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the

---

[3] Idaho Code section 9-102 provides that "[a]ll questions of law arising upon the trial, including the admissibility of testimony, the facts preliminary to such admission, and the construction of statutes and other writings, and other rules of evidence, are to be decided by the court when submitted and before the trial proceeds, and all discussions of law are to be addressed to the court."

movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). A moving party must support its assertion by citing particular materials in the record or by showing the "materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s]." I.R.C.P. 56(c)(1)(B). Summary judgment is improper "if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented." *Jones*, 169 Idaho at 551, 498 P.3d at 1180 (quoting *Owen*, 168 Idaho at 640–41, 485 P.3d at 136–37). "Even so, a 'mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment.'" *Id*.

When reviewing the grant or denial of a motion for reconsideration, the district court, as well as this Court, "must apply the same standard of review that the court applied when deciding the original order that is being reconsidered." *Drakos v. Sandow*, 167 Idaho 159, 162–63, 468 P.3d 289, 292–93 (2020) (quoting *Alsco, Inc. v. Fatty's Bar, LLC*, 166 Idaho 516, 524, 461 P.3d 798, 806 (2020)). Thus, "when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id*. (citing *Ciccarello v. Davies*, 166 Idaho 153, 159, 456 P.3d 519, 525 (2019)).

### III. ANALYSIS

Before reaching the merits of Bracken's arguments on appeal, we must address what claims are properly before us. Bracken's original complaint alleged eight causes of action: (1) negligence in operational functions; (2) gross negligence; (3) reckless, willful, and wanton conduct in refusing to accept the application; (4) acceptance of benefits/ratification of actions of employees; (5) a claim for declaratory judgment seeking a declaration that the Ketchum city ordinance was invalidly enacted; (6) a claim for declaratory judgment seeking a declaration that Ketchum's ordinance was illegal spot zoning; (7) damages under 42 U.S.C. section 1983; and (8) a claim against the City of Ketchum for violating 42 U.S.C. section 1983. Bracken later amended his complaint to add Count Nine (punitive damages related to his 42 U.S.C. section 1983 claims) and Count Ten (a claim for intentional interference with economic expectancy).

The district court dismissed Count One (negligence) and Count Two (gross negligence) on Respondents' first partial motion for summary judgment after concluding Bracken's negligence claims were barred by the economic loss rule. The district court dismissed Count Four (acceptance

10

of benefits/ratification of actions of employees) after concluding it was barred by statutory immunity. The district court granted Respondents' motion for summary judgment on Count Five (seeking a declaration that the Ketchum City ordinance was unlawfully enacted) and declared Ketchum ordinance 1174 became valid on July 12, 2017. Count Six (seeking a claim for declaratory judgment that Ketchum's ordinance was illegal spot zoning) was dismissed based on a stipulation between the parties.

Bracken has not challenged these alternative bases for dismissing these claims on appeal. In the context of summary judgment, this Court has repeatedly held that "an appellant's failure to address an independent ground for a grant of summary judgment is fatal to the appeal." *La Bella Vita, LLC v. Shuler*, 158 Idaho 799, 806, 353 P.3d 420, 427 (2015) (quoting *Weisel v. Beaver Springs Owners Ass'n, Inc.*, 152 Idaho 519, 525–26, 272 P.3d 491, 497–98 (2012)). "[T]he fact that one of the grounds may be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the other grounds." *Id.* (quoting *Andersen v. Prof'l Escrow Servs., Inc.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005)). Thus, the district court's dismissal of Counts One, Two, Four, Five, and Six is affirmed.

The district court had originally dismissed Count Three on Respondents' second partial motion for summary judgment after concluding it did not state an actionable claim under Idaho law. However, the district court later allowed Bracken to amend Count Three in his second amended complaint to cure any defects. The district court did not rule on Count Three as amended. That said, in response to a question at oral argument before this Court, Bracken's counsel asserted that Count Three was part of his 42 U.S.C. section 1983 claims, and conceded it was "not a separate count, it's not a separate state law count." Bracken's attorney concluded, "there's one state law claim that's in existence, and that's the intentional interference with a tort, I think that's the last one that got dismissed on summary judgment." Counsel then confirmed that he was only appealing the dismissal of the federal 1983 claims (Counts Three, Seven, Eight, and Nine), and the intentional interference of economic expectancy claim (Count Ten).

A.    **Bracken's rights vested under the second application when it was filed on April 10, 2017.**

The first issue Bracken raises on appeal pertains to when his rights vested under the second application. Bracken argues his rights vested when the application was first filed on April 10, 2017, and again when it was refiled on June 19, 2017. Bracken claims that once the application vested

11

on April 10, his rights could not be taken away by Ketchum's enactment of the new ordinance on July 12, 2017, the date it was published in the official newspaper.

Idaho law is well established that an applicant's rights are determined by the ordinance in existence at the time of filing an application for the permit. *See S. Fork Coal. v. Bd. of Comm'rs of Bonneville Cnty.*, 117 Idaho 857, 860–61, 792 P.2d 882, 885–86 (1990); *Cooper v. Board of Cnty. Comm'rs of Ada Cnty.*, 101 Idaho 407, 614 P.2d 947 (1980); *Ready-To-Pour, Inc. v. McCoy*, 95 Idaho 510, 511 P.2d 792 (1973); *Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 448 P.2d 209 (1968). This Court originally explained its adoption of this rationale in *Ben Lomond*:

> [T]o hold for the City in the present case would mean that a city, merely by withholding action on an application for a permit, could change or enact a zoning law to defeat the application. It could, in substance, give immediate effect to a future or proposed zoning ordinance before that ordinance was enacted by proper procedure.

92 Idaho at 602, 448 P.2d at 216.

Our holding in *Ben Lomond* prohibits the Respondents' bad faith conduct in this case. "Certainly, if the applicant does not comply with the Ordinance, a permit cannot be issued. However, the vested right in question is not the guaranteed right to obtain the permit, but rather the right to have the application evaluated and measured under the Ordinance in effect at the time of application." *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley Cnty*., 132 Idaho 551, 556, 976 P.2d 477, 482 (1999), overruled on other grounds by *City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012); *see also Ready-to-Pour*, 95 Idaho at 513, 511 P.2d at 795 (holding that the rule regarding the ordinance under which an applicant's rights are determined is the minority view "that the applicant's rights are *measured* under the law in effect at the time of the application.") (emphasis in original).

Austin, with the encouragement of Jonas, intentionally withheld action on Bracken's second application until the City could amend its ordinance in an attempt block Bracken's proposed gas station. Other than Austin's unsubstantiated suggestion that Bracken's second application was "incomplete," no facts show that Bracken skirted the original ordinance. Rather, it appears Respondents delayed accepting Bracken's second application so the City could rush to pass the new ordinance. The district court elaborated on the impediments to Bracken's application process, explaining:

> As noted by two witnesses who have been around Ketchum Planning and Zoning for a while, the difficulties [Bracken] encountered were unusual. Steve Cook, a

12

Ketchum Planning and Zoning Commission[er] for 9 years, and an architect in Ketchum since 1972, found that the requests were out of sequence. The staff continually requested more information, made more expensive requests, and declined studies or materials Bracken submitted. The design review process was initiated before even accepting Bracken's application, but this process normally would not begin until after a conditional use permit was granted. There were an unusual number of hearings considering the size of the issue. Garth McClure, a civil engineer who had been involved in public process and public hearings for land use application in all jurisdictions in Blaine County with zoning or permit applications, concurs. Among other expenses, the traffic studies cost $25,935, and the necessary site planning work cost $26,332.

We hold that the ordinance in effect on April 10, 2017, controls. Bracken's right to have the application evaluated under the then-existing ordinance vested when he attempted to file his second application. This is even more true because the P&Z Commission had orally ruled in Bracken's favor and ordered Austin to accept and process Bracken's second application *before* the proposed ordinance was officially enacted. Having determined Bracken had a vested right, we must consider: (1) whether judicial review was the exclusive remedy available to Bracken; and if so, (2) whether he was excused from exhausting administrative remedies and petitioning for judicial review.

**B.** **Typically, an aggrieved land use applicant must exhaust administrative remedies under LLUPA before challenging those land use decisions or actions in court; however, based on the unique facts here, Bracken was excused from exhausting administrative remedies before pursuing judicial review.**

The primary issue raised by this appeal is whether the district court had authority to act on Bracken's complaint. The district court held it lacked jurisdiction to consider Bracken's state law claims because he failed to both exhaust administrative remedies and pursue judicial review. Bracken argues that "[o]nce the district court glued itself to this remedy, it dismissed any notion that Bracken had a tort claim and used this as the basis to dismiss all of Bracken's claims . . . ." As explained above—nearly all Bracken's state law claims were dismissed on alternate grounds that Bracken has not challenged on appeal. Still, we consider the applicability of the district court's holding to Count Ten, Bracken's remaining state law claim for intentional interference with economic expectancy.

*1. LLUPA standards in general.*

The administrative exhaustion doctrine is well-established in American jurisprudence, dating back to the turn of the twentieth century. *Hartman v. Canyon Cnty.*, 170 Idaho 666, 670,

13

516 P.3d 90, 94 (2022). "Generally stated, administrative exhaustion 'requires that where an administrative remedy is provided by statute, relief must first be sought by exhausting such remedies before the courts will act.'" *Id.* (quoting *Regan v. Kootenai Cnty.*, 140 Idaho 721, 725-26, 100 P.3d 615, 619-20 (2004)). The rule serves twin purposes. First, it safeguards agency autonomy to make decisions within an agency's expertise. *Id.* (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)). Second, as a corollary of allowing agencies to resolve disputes within their jurisdiction, exhaustion protects judicial economy. *Id.* (citing *McKart*, 395 U.S. at 194–95).

In general, LLUPA requires litigants to utilize available administrative remedies before seeking judicial review. I.C. §§ 67-6521(1)(d) and 67-6519(5). Idaho Code section 67-6521 provides that an "affected person aggrieved by a final decision concerning matters identified in section 67-6521(1)(a), Idaho Code [the failure to act upon an application for a special use permit], may within twenty-eight (28) days after all remedies have been exhausted under local ordinances seek judicial review as provided by chapter 52, title 67, Idaho Code." Decisions about a conditional use permit are the type of land use decision that fall within the purview of LLUPA and its exhaustion requirement. *City of Ririe v. Gilgen*, 170 Idaho 619, 626, 515 P.3d 255, 262 (2022); *see also Citizens Against Linscott/Interstate Asphalt Plant v. Bonner Cnty. Bd. Of Comm'rs*, 168 Idaho 705, 715, 486 P.3d 515, 525 (2021).

This Court has held that the failure to exhaust administrative remedies deprives courts of jurisdiction to consider challenges to local land use decisions. *Palmer v. Bd. of Cnty. Comm'rs of Blaine Cnty.*, 117 Idaho 562, 565, 790 P.2d 343, 346 (1990); *S Bar Ranch v. Elmore Cnty.*, 170 Idaho 282, 301, 510 P.3d 635, 654 (2022) (district court did not have jurisdiction to consider S Bar's challenge to a Board of County Commissioners' denial of a conditional use permit because S Bar failed to exhaust administrative remedies and timely petition for judicial review). Thus, direct collateral attacks on land use decisions are unavailable when review is available under LLUPA.

For example, in *Palmer*, homeowners brought what their attorney characterized as a "tort claims case" against county commissioners after they were prohibited by a stop work order from completing a residence for which they had obtained a building permit. Their action was dismissed on summary judgment for their failure to exhaust administrative remedies. We held that failure to exhaust administrative remedies doomed their direct action:

14

Since the Palmers did not apply for a special use permit and obtain a decision of the county commissioners on that application, they did not exhaust their administrative remedies under the Act. The Act commits to local units of government the authority over planning and zoning matters. It is the county through its planning and zoning commission and the county commission that should make the decision whether a special use permit should be issued. Only after the exhaustion of remedies provided under the Act and under local ordinances may an unsuccessful applicant or an affected person seek judicial review.

117 Idaho at 565, 790 P.2d at 346; *see also Regan v. Kootenai Cnty.*, 140 Idaho 721, 725-26, 100 P.3d 615, 619-20 (2004) (The Regans' failure to exhaust their administrative remedies deprived the district court of subject matter jurisdiction over their claim for declaratory relief).

   2. *LLUPA applies to Bracken's claims.*

Normally, an applicant in Bracken's shoes would have to pursue the administrative remedies required of him under LLUPA before seeking redress in the courts. Bracken had administrative remedies available that he did not pursue. This is not a case in which the City is alleged to have taken actions against Bracken unrelated to his application for a conditional use permit. LLUPA applies because the City's actions involved the handling of, and its actions (or inaction) related to Bracken's application for a conditional use permit. Thus, his claim is not independent of his land use application; instead, it is tied to it.

Section 17.144.010 of the Ketchum Municipal Code provides that "[a]n appeal of any order, requirement, decision or determination of the administrator made in the administration or enforcement of this title may be taken by any affected person." The Ketchum Municipal Code specifies that an "affected person" is defined just as an "affected person" under LLUPA as: ["one having a bona fide interest in real property which may be adversely affected by . . . the approval, denial or failure to act upon an application for a . . . special use permit"]. I.C. § 67-6521. Austin was the director of the Planning and Building Department in 2017, and thus was the "administrator" of the zoning ordinance. Bracken was aware of his obligations under the City code because he appealed Austin's first refusal to accept his second application to the P&Z Commission. Thus, Bracken harnessed some of the administrative remedies available. He was aware of and used administrative remedies, ostensibly to his benefit.

   3. *In rare instances, exhaustion of administrative remedies under LLUPA is excused.*

15

While we have recognized the important policy and legal canon underpinning the exhaustion doctrine, this Court has also acknowledged that, "in unusual circumstances," failure to exhaust administrative remedies can be excused. *See Palmer*, 117 Idaho at 564–65, 790 P.2d at 345–46 ("This Court has frequently announced that except in unusual circumstances parties must exhaust their administrative remedies before seeking judicial recourse."). We have elaborated on this point, noting two exceptions to the black-letter rule:

> As a general rule, a party must exhaust administrative remedies before resorting to the courts to challenge the validity of administrative acts. We have recognized exceptions to that rule in two instances: (a) when the interests of justice so require, and (b) when the agency acted outside its authority.

*KMST, LLC v. Cnty. of Ada*, 138 Idaho 577, 583, 67 P.3d 56, 62 (2003) (citation omitted); *see also Regan*, 140 Idaho at 725, 100 P.3d at 619 (acknowledging the two exceptions to the exhaustion rule). "Styled differently, courts will not require exhaustion 'when exhaustion will involve irreparable injury and when the agency is palpably without jurisdiction.'" *Park v. Banbury*, 143 Idaho 576, 581, 149 P.3d 851, 856 (2006) (quoting *Sierra Life Ins. Co. v. Granata*, 99 Idaho 624, 627, 586 P.2d 1068, 1071 (1978)).

a. Bracken is excused from exhausting administrative remedies due to the biased conduct of Respondents.

The "when justice so requires" exception referenced above encompasses those rare circumstances when bias or prejudgment by the decisionmaker can be shown. *See Owsley v. Idaho Industrial Comm'n*, 141 Idaho 129, 135–36, 106 P.3d 455, 461–62 (2005) (recognizing an exception to the exhaustion requirement "where bias or prejudgment by the decisionmaker can be demonstrated" because due process entitles a person to an impartial tribunal and requiring exhaustion before a biased decision maker would be futile). "[T]he due process clause entitles a person to an impartial and disinterested tribunal." *Id*. at 135, 106 P.3d at 461 (citing *Eacret v. Bonner Cnty.,* 139 Idaho 780, 784, 86 P.3d 494, 498 (2004)). Actual bias on the part of a decisionmaker is "constitutionally unacceptable." *Id*. at 135, 106 P.3d at 461 (quoting *Johnson v. Bonner Cnty. Sch. Dist. No. 82,* 126 Idaho 490, 493, 887 P.2d 35, 38 (1994)).

We reached a similar conclusion in *Johnson*. Mr. Johnson, a school principal, had engaged in a public dispute with members of the school board. Both Johnson and members of the board traded barbed comments that were published in the local newspaper. *Id*. When the board acted to fire him, Johnson, alleging bias, sought a restraining order in district court to prevent the board

from acting as the adjudicator at his termination hearing. *Id*. at 491–92, 887 P.2d at 36–37. Reasoning that it was not empowered to enjoin the board under those circumstances, the district court dismissed Johnson's action. *Id*. at 492, 887 P.2d at 37. On review, this Court reversed the district court's dismissal. *Id*. at 494, 887 P.2d at 39. We found that requiring a litigant to submit to a biased decisionmaker to be a "constitutionally unacceptable" violation of due process. *Id*. at 493, 887 P.2d at 38. Therefore, "upon a showing that there is a probability that a decisionmaker in a due process hearing will decide unfairly any issue presented in the hearing, a trial court may grant an injunction to prevent the decisionmaker from participating in the proceeding." *Id*. at 494, 887 P.2d at 39.

Bracken argues that seeking additional administrative remedies was excused because further administrative remedies would have been futile, given the bias demonstrated by the City's leaders and representatives. He alleges that the City, through its agents, was biased against him and thus provided him with no fair forum in which to seek any further administrative redress. He alleges that Mayor Jonas, who supervises the city staff, including Austin and Frick, ran an unprecedented anonymous poll to influence the City's consideration of Bracken's applications. Jonas also instructed Austin to reject Bracken's second application on at least one occasion. Additionally, Jonas, City Administrator Suzanne Frick, and former Sun Valley Mayor Ruth Lieder attended a dinner at Barbi Reed's house directly across from the property where Bracken held his option to purchase. Reed was the chairperson of a group called the "Citizens Against Bracken Station." Frick admitted that the meeting was "about [Bracken's] application." Further, the Ketchum City Council approved the expedited passing of the ordinance in a targeted effort to prohibit Bracken's application from being approved. Frick admitted that the City made a conscious decision in December 2017 that Bracken was not going to be allowed to file his application.

Based on these circumstances, Bracken argues that seeking additional administrative remedies was excused because further administrative remedies would have been futile given the bias demonstrated by the City's leaders and agents, and the district court would have had no administrative action to review. We agree.

The general principles underpinning the exception stated in *Johnson* and *Owsley* are at play here. Given that we are reviewing this case de novo, we apply a focused review as we did in *Owsley*, with all disputed facts construed "liberally in favor of [Bracken], and all reasonable

17

inferences that can be drawn from the record are to be drawn in [his] favor." *Dep't of Fin., Sec. Bureau v. Zarinegar*, 167 Idaho 611, 629, 474 P.3d 683, 701 (2020).

Respondents' actions throughout this case specifically targeted Bracken's efforts to obtain a conditional use permit to construct a gas station on Main Street, a use permissible when he filed his original applications. Austin admitted as much, explaining there was a sense of urgency in passing the new ordinance to prevent "a single application coming in and tying up city staff and the community for months and months and months." Austin's comments establish that Bracken's second application would never be processed, even if he had continued to seek relief by exhausting administrative remedies. Austin's conduct exemplifies how Bracken's attempts to seek redress by administrative process were and would be "futile."

We thus hold that, while Bracken would normally have to exhaust administrative remedies in front of a fair, unbiased decisionmaker, such action is excused here under these exceptional circumstances. Accordingly, the district court's dismissal of Count Ten—the tort claim for interference with economic expectancy—is reversed.

**C.     The district court did not err in dismissing Bracken's 42 U.S.C. section 1983 claims.**

Next, Bracken argues the district court erred in dismissing his federal claims. Bracken argues the district court erred in grouping his substantive due process claims in with his procedural due process claims and concluding Ketchum's conditional use permit application process was not entitled to due process protection or that Bracken did not have a constitutionally protected property interest. Bracken also disputes the district court's conclusion that his federal claims were not ripe for adjudication. In response, Respondents argue Bracken could not have a constitutionally protected property interest in a conditional use permit application because he has no legal entitlement to a conditional use permit. The decision to grant or deny a conditional use permit is within the discretion of City officials empowered to evaluate the merits of the application. With no protected property interest, Respondents add, Bracken also lacks a protected interest in the procedures for obtaining a conditional use permit.

United States Code, Title 42, Section 1983 "does not confer any substantive rights. It is a vehicle for vindicating rights secured by the United States Constitution or federal law. It provides a cause of action to anyone who is deprived, by a person acting under color of state law, of rights secured by federal law." *Bryant v. City of Blackfoot*, 137 Idaho 307, 314, 48 P.3d 636, 643 (2002). 42 U.S.C. section 1983 only provides a remedy for violating constitutional rights, not for violations

18

related to "benefits" or "interests." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). As a result, for a 42 U.S.C. section 1983 claim to survive summary judgment, the district court must determine whether there is a "factual basis for the claimed violations of the Constitution" that was violated by individuals acting under the color of state law. *Bryant*, 137 Idaho at 315, 48 P.3d at 644.

The district court determined Bracken did not have a constitutional right in a conditional use permit or the procedures employed in obtaining such a permit, and so Bracken did not have a viable 42 U.S.C. section 1983 claim. The district court dismissed Counts Seven (damages under 42 U.S.C. section 1983) and Eight (a claim against the City of Ketchum for violating 42 U.S.C. section 1983). The district court further held that Bracken's federal claims were not ripe since administrative remedies available to Bracken were not exhausted before bringing the complaint.

2. *Bracken did not have a constitutional right to a conditional use permit because Respondents had discretion to deny it.*

Addressing the district court's first basis for dismissing Bracken's federal claims, Bracken argues that a vested right to have his CUP considered under the then-existing ordinance is a property right. Bracken contends the district court erroneously found Bracken's constitutional claim was solely grounded on process or procedure when Bracken had distinct property interests at stake that the district court failed to address.

First, Bracken argues that he had the vested right to have his application "evaluated and measured." *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley Cnty*., 132 Idaho 551, 556, 976 P.2d 477, 482 (1999), overruled on other grounds by *City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012) (an applicant has a vested right to have an application evaluated and measured under the Ordinance in effect at the time of application). Bracken argues that vested right also protects and insures against a due process invasion of another property right—the right of access to one's land from a public way. Bracken concludes the district court erred in holding that his vested right was not a constitutionally protected right that must be afforded due process.

In support of his contention that he had a "protectable property right in the procedures governing his application" Bracken quotes the First Circuit decision in *Raper v. Lucy*:

> The district court ruled that since the issuance of an operator's license is discretionary with the state, a constitutionally guaranteed "right" was not involved. By so holding, the court misconceived the issue. In his complaint, plaintiff did not argue that he had a right to an operator's license, and we may take it as settled that such a right, federal or state, does not exist. *See, e. g.*, *Perez v. Tynan*, 307 F. Supp. 1235, 1238 (D.C. Conn. 1969); *United States v. Carter*, 275 F. Supp. 769, 770 (D.C.

19

D.C. 1967). However, the plaintiff did assert that he had a constitutionally protected right to procedural due process in the state application procedures whereby a determination of whether to issue such a license will be made. With this assertion, we are in complete agreement.

. . . In *Wall v. King*, 206 F.2d 878 (1st Cir.), *cert. denied*, 346 U.S. 915, 74 S. Ct. 275, 98 L. Ed. 411 (1953), this court was faced with the contention that the personal liberty provision of the due process clause should be extended to cover the use of a motor vehicle. After careful analysis, the court accepted this proposition, remarking:

> "We have no doubt that the freedom to make use of one's own property, here a motor vehicle, as a means of getting about from place to place, whether in pursuit of business or pleasure, is a 'liberty' which under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law." 206 F.2d at 882.

488 F.2d 748, 751–52 (1st Cir. 1973). The First Circuit concluded that "[F]ourteenth [A]mendment due process will attach to state procedures regulating the application and issuance of a motor vehicle operator's license. Consequently, the claims asserted in the complaint must be said to involve a federally protected right." *Id*. at 752.

Respondents counter that *Raper* is inapt because it involves an application for a driver's license, and federal law recognizes a due process liberty interest in driving a vehicle. Courts have recognized no comparable liberty or property interest for a conditional use permit. *See Welch v. Paicos*, 66 F. Supp. 2d 138, 164 (D. Mass. 1999) ("The courts have not recognized a similar [due process] right to develop one's own property as one pleases; indeed, they have reached the opposite result.").

The district court relied on several cases to hold that an applicant only has a due process guarantee in procedures which ultimately affect a constitutional right. These cases are persuasive. For example, in *Gerhart v. Lake Cnty, Montana*, 637 F.3d 1013 (9th Cir. 2011), a plaintiff had experienced some difficulties with a few employees of the county, including one of the county commissioners when trying to obtain an approach permit for his property. This animosity contributed to an outright denial of the plaintiff's approach permit by the commissioners, even though denial of approach permits was exceedingly rare. *Id*. at 1016–19. The plaintiff alleged that his constitutional rights were violated by the denial. *Id*. at 1020. The Ninth Circuit held that the plaintiff did not have a protected constitutional interest in an approach permit since state law granted the county a large amount of latitude in granting such permits. *Id*. It also determined that since the plaintiff did not have any informal agreement or understanding with the county, the

policies and practices of the county related to approach permits did not create a constitutionally protected interest. *Id.*

Closer to home, the federal district court for Idaho held that an application for a conditional use permit was not a constitutionally protected property interest because, as a matter of state and local law, a city has full discretion to deny the application. *MountainWest Ventures, LLC v. City of Hope*, Case No. 2:14-cv-000290-BLW, 2015 WL 222448 (D. Idaho 2015). By way of background, MountainWest Ventures applied for a conditional use permit to develop certain real property, and that application was denied at the end of a public hearing. *Id.* MountainWest filed suit in federal court, alleging various procedural deficiencies with the City's denial of its application, claiming that its Fourteenth Amendment right to due process had been violated. Among other things, MountainWest alleged that the City itself, or certain members of the City Council:

> (1) did not provide timely or adequate information to MountainWest before or after the public hearings; (2) did not allow MountainWest to participate in the application review meeting; (3) met with, and provided information to officials from the Idaho Transportation Department, without first notifying MountainWest; (4) improperly remanded the application to MountainWest after the May 8, 2013 hearing; (5) did not include in the record all of the information MountainWest had provided; (6) did not timely decide the application; (7) conducted an executive City Council session without identifying the basis for doing so; (8) refused to provide MountainWest with a copy of the preliminary decision document denying MountainWest's application; and (9) provided no forum for an appeal of the City's administrative land use decisions.

*Id.* at *1 (internal citations omitted). The City of Hope moved to dismiss on grounds that MountainWest did not have a protected property interest in the conditional use permit it sought. The federal district court granted the motion, reasoning that since the issuance of the permit was discretionary under the plain language of the applicable state law and local ordinance, MountainWest had no "legitimate claim of entitlement" to the permit.

As recognized by Idaho's federal court, Idaho statutory law governing conditional or special use permits grants wide discretion to Idaho's political subdivisions in making these decisions. Idaho Code section 67-6512(a) provides:

> A special use permit *may be granted* to an applicant if the proposed use is conditionally permitted by the terms of the ordinance, subject to conditions pursuant to specific provisions of the ordinance, subject to the ability of political subdivisions, including school districts, to provide services for the proposed use, and when it is not in conflict with the plan.

21

(Emphasis added).

Noting the permissive language in both Idaho Code section 67-6512(a) and the applicable local ordinance, the federal district court determined under well-settled principles of statutory construction that the City of Hope retained the discretion to deny the permit application. It concluded MountainWest had no "legitimate claim of entitlement" that could support a claim for violating due process:

> The use of the word "may"—rather than "shall"—in both the statute and the ordinance indicates that the City Council retained discretion to grant or deny a permit. *See Marcia T. Turner, L.L.C. v. City of Twin Falls*, 159 P.3d 840, 848–89 (Idaho 2007); *see also Burch v. Smathers*, 990 F. Supp. 2d 1063, 1073 (D. Idaho 2014). As a result, MountainWest cannot plausibly allege that it has a legitimate claim of *entitlement* to a conditional use permit.

*Id*. (emphasis in original).

The *MountainWest* decision aligns with *Burch v. Smathers*, 990 F. Supp. 2d 1063 (D. Idaho 2014). In *Burch*, the plaintiff applied for a special use permit with the City of Orofino to operate a law office in a residential zone. *Id*. at 1067. After a public hearing, the Planning and Zoning Commission voted to recommend approval of the application to the City Council. The City Council held a public hearing on the matter, during which it heard testimony from individuals who were concerned that the operation of a law office would cause traffic and safety concerns, and that the proposed use conflicted with the character of the residential zone. *Id*. The City ultimately denied Burch's application, remarking on the traffic and neighborhood character concerns raised during the public hearing before the City Council. *Id*. at 1068.

In his complaint against the mayor and city council members under 42 U.S.C. section 1983, Burch alleged that the City Council's hearing procedures did not comply with LLUPA, and that because permits had been granted to other applicants, the City Council deprived him of his rights to due process and equal protection. *Id*. The district court dismissed Burch's due process claims at summary judgment, ruling that he had no constitutionally protected property interest in an application for a permit that the City had full discretion to deny. Citing the same permissive language in Idaho Code section 67-6512, and the relevant sections of the Orofino City Code, the court determined that, notwithstanding Burch's allegations that the City Council did not comply with the procedural requirements set forth in the City Code and LLUPA, Burch could not satisfy the threshold requirement of a constitutionally protected property interest:

In sum, Idaho law does not impose a constitutionally significant restriction on the City Council's discretion to issue or deny special use permits. Notwithstanding Burch's unilateral expectation, the procedural requirements of LLUPA and the Orofino City Code create no legitimate claim of entitlement to a special use permit. Because Burch does not make the threshold showing of a constitutionally protected interest, his federal due process claim fails as a matter of law.

*Id*. at 1074.

Bracken argues that these cases do not apply because the Ketchum ordinance requires a permit to be issued once certain requirements are satisfied. The applicable Ketchum ordinance provides:

A conditional use permit shall be granted by the commission *only if* the applicant demonstrates that:

A. The characteristics of the conditional use will not be unreasonably incompatible with the types of uses permitted in the applicable zoning district;

B. The conditional use will not materially endanger the health, safety and welfare of the community;

C. The conditional use is such that pedestrian and vehicular traffic associated with the use will not be hazardous or conflict with existing and anticipated traffic in the neighborhood;

D. The conditional use will be supported by adequate public facilities or services and will not adversely affect public services to the surrounding area, or conditions can be established to mitigate adverse impacts; and

E. The conditional use is not in conflict with the policies of the comprehensive plan or the basic purposes of this chapter.

KMC 17.116.030 (emphasis added). Respondents concede the language of the ordinance restricts the Commission's discretion, but assert it does not mandate the approval of the application as Bracken asserts. The ordinance provides that a conditional use permit will be granted "only if" the applicant shows that the criteria for granting a permit are met. Thus, it constrains the discretion of the Commission in granting a permit; the ordinance does not restrict the Commission's discretion to deny one. Indeed, if the Commission finds that any of the criteria are not met, it may deny the permit.

Still, Bracken maintains that "[a]s a matter of established fact, the Commission had no further reason to deny Bracken a [conditional use permit]. Bracken's First Application met four of the five conditions for a permit, and he had cured the last 'potential' issue with his Second Application." Respondents counter that Bracken ignores the considerable discretion involved in

23

determining whether the criteria for granting a permit are met. For example, the Commission has discretion to determine whether the use will generate too much traffic, whether it will conflict with the character of the neighborhood, whether it conflicts with the policies of the comprehensive plan, and whether it aligns with the health, safety, and welfare of the community. These are criteria about which reasonable minds may disagree, and thus, the Commission has broad discretion to determine whether, in its judgment, these criteria are met.

Given the discretion inherent in determining whether to grant a conditional use permit, the district court correctly found Bracken did not have a constitutional right that was infringed. Thus, we hold Bracken had no claim under either a procedural or substantive due process theory because he had no "legitimate claim of entitlement" to a permit that the City had discretion to deny in a reasonable exercise of its discretion. *See Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011).

Bracken focuses on Respondents' disregard for "procedural safeguards," as adequate to support the infringement of his constitutional rights. However, the poor conduct on the part of the City and its agents does not foreclose Respondents' discretion to ultimately grant or deny the application. Because that discretion remained with the Respondents, regardless of their bad conduct, we affirm the district court's dismissal of Bracken's federal claims—Counts Three, Seven, and Eight.

Since we have affirmed the district court's dismissal of Bracken's federal claims, we do not address whether Bracken's federal claims were ripe. *See Brunobuilt, Inc. v. Strata, Inc*., 166 Idaho 208, 222, 457 P.3d 860, 874 (2020) (declining to reach alternative bases for dismissal considered by district court once this Court had affirmed the district court's decision).

**D.     The district court did not err in dismissing Bracken's punitive damage claim.**

Count Nine of Bracken's first and second amended complaint sought punitive damages for Respondents' alleged 42 U.S.C. section 1983 violations. The district court dismissed Bracken's punitive damages claim once it dismissed Bracken's other 42 U.S.C. section 1983 claims, reasoning there could be no punitive damages without other liability.

On appeal, Bracken argues that punitive damages may be awarded even with no other liability. Bracken cites *Smith v. Wade*, 461 U.S. 30 (1982), which noted "punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury." *Id*. at 55, n. 21. Respondents

24

counter that the quoted statement from *Smith* simply means punitive damages may be assessed to punish a defendant that *violates the plaintiff's constitutional rights* even when the plaintiff can prove no compensable damages. The Respondents are correct.

Here, the district court dismissed Bracken's punitive damage claim because punitive damages cannot be assessed against a defendant absent liability, and the district court found there was no violation of Bracken's constitutional rights. The district court did not err in dismissing Bracken's punitive damages claim. Since Bracken's claims asserting constitutional violations were dismissed, there is no underlying liability to use as the springboard from which to award punitive damages. *See Peden v. Suwannee County. Sch. Bd.*, 837 F. Supp. 1188, 1197 (M.D. Fla. 1993) (in a section 1983 action, "a jury may properly award[ ] punitive damages even though it awards no compensatory damages, but only where the jury first finds that a constitutional violation was committed by the party against whom the punitives are imposed."). The district court's dismissal of Count Nine is affirmed.

**E.** **The district court did not err in refusing to rule on Bracken's motions for rulings on issues of law.**

Next, Bracken alleges there are no identified issues of fact, and so the district court erred in refusing to rule on Bracken's motion for rulings of law. A district court's decision whether and when to consider a motion for rulings of law is reviewed for an abuse of discretion. *See McCandless v. Pease*, 166 Idaho 865, 872, 465 P.3d 1104, 1111 (2020). When this Court reviews an alleged abuse of discretion by a trial court, the Court considers the following: "Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

While Respondents' third motion for summary judgment was pending, Bracken moved for rulings on eighteen issues of law along with a subsequent motion for summary judgment. Many of these eighteen "motions" asked the district court to rule on the propriety of actions taken by Austin. The motions asked the court to conclude that Austin acted repeatedly without authority in refusing to accept Bracken's application.

Bracken based his motion on Idaho Code section 9-102:

All questions of law arising *upon the trial*, including the admissibility of testimony, the facts preliminary to such admission, and the construction of statutes and other

25

writings, and other rules of evidence, are to be decided by the court when submitted and before the trial proceeds, and all discussions of law are to be addressed to the court.[4]

(Emphasis added).

The district court held it was procedurally improper to determine a motion for rulings on issues of law before a trial commences. The court found the phrase "upon the trial" meant when the trial starts and determined Bracken had failed to explain or cite any authority to support why his motion was proper at an earlier point in the proceedings.

There appears to be an inherent conflict within the timing designated in the statute. On one hand, "upon" is defined as "immediately following on," "very soon after," or "at the time of." *Upon*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). Thus, the meaning of "upon the trial" would be immediately following the start of trial or at the time of trial. On the other hand, the statute designates all questions of law are to be decided "when submitted."

"[A]ny ambiguity in a statute should be resolved in favor of a reasonable operation of the law." *State v. Neal*, 159 Idaho 439, 445, 362 P.3d 514, 520 (2015) (quoting *Lawless v. Davis*, 98 Idaho 175, 177, 560 P.2d 497, 499 (1977)). Here, we must consider the timing of Bracken's motion. Bracken submitted his motion while Respondents' third motion for summary judgment was pending, at the same time he moved for summary judgment. But he then claimed a ruling on his motions was necessary "for the district court to properly instruct the jury at trial." Based on the pending motions it was unclear whether a trial would ever occur. As a result, it was impractical to ask the district court to decide issues of law for a trial that may never happen. We hold the district court did not abuse its discretion in denying Bracken's motion.

## F.     We vacate the district court's award of all costs to Respondents.

The district court granted Respondents' request for discretionary costs after concluding Bracken's claims lacked "any legal merit." The court found that in defending any lawsuit where all adverse claims lacked a reasonable basis in law, discretionary costs are necessary and exceptional since those claims should have never been brought in the first place. Here, the district court found Respondents' costs were exceptional because the case should have been confined to

---

[4] The statute appears to encroach on the judiciary's authority to set its own procedural rules. *In re SRBA Case No. 39576*, 128 Idaho 246, 255, 912 P.2d 614, 623 (1995) (quoting *State v. Beam*, 121 Idaho 862, 863, 828 P.2d 891, 892 (1992) ("[T]his Court's rule making power goes to procedural, as opposed to substantive, rules.")). That said, neither party has raised the propriety of section 9-102 on appeal, so we leave that determination for another day.

administrative remedies followed by judicial review. Bracken argues the district court erred in awarding discretionary costs because his factual allegations remained unchallenged and had merit. Respondents counter that the district court based its award of discretionary costs on the lack of merit in Bracken's *legal* arguments, not his factual claims.

An award of discretionary costs is authorized under Idaho Rule of Civil Procedure 54(d)(1)(D) "on a showing that the costs were necessary and exceptional costs, reasonably incurred, and should in the interests of justice be assessed against the adverse party." An award of discretionary costs is reviewed for abuse of discretion, and the party opposing the award of costs bears the burden of showing that the district court abused its discretion. *Easterling v. Kendall*, 159 Idaho 902, 917, 367 P.3d 1214, 1229 (2016). When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of the four essential questions noted above. *See Lunneborg* 163 Idaho at 863, 421 at 194.

Because we have reversed the district court's dismissal of Count Ten, we vacate the district court's award of all costs, discretionary and automatic, pending the outcome of Bracken's remaining claim on remand.

### G.     We decline to award attorney fees on appeal.

Both parties request attorney fees on appeal. In his opening brief, Bracken states he is seeking "an award of attorney fees on this appeal pursuant to 42 USC [section] 1988. *Larez v. Los Angeles*, 946 F.2d 630 (9th Cir. 1991)." Bracken does not provide any analysis or argument in support of his request in his initial brief. "A party seeking attorney fees on appeal must state the basis for such an award." *Jones v. Lynn*, 169 Idaho 545, 565, 498 P.3d 1174, 1194 (2021) (citing *Bromund v. Bromund*, 167 Idaho 925, 932, 477 P.3d 979, 986 (2020)). This means that the party seeking fees must provide argument on the issue and not simply cite a statute. I.A.R. 35(a)(6), (b)(6). "[A]bsent any legal analysis or argument, 'the mere reference to [a] request for attorney fees is not adequate.'" *Jones*, 169 Idaho at 565, 498 P.3d at 1194 (quoting *Johnson v. Murphy*, 167 Idaho 167, 176, 468 P.3d 297, 306 (2020) (second alteration in original)).

Although Bracken thoroughly supports his request in his reply brief, "this Court will not consider arguments raised for the first time in the appellant's reply brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) (quoting *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004)). A reviewing court looks only to the initial brief on appeal for the

issues presented because those are the arguments and authority to which the respondent can respond in the respondent's brief. *Id*. Thus, Bracken's request for attorney fees is denied.

Respondents also request attorney fees on appeal under Idaho Code sections 12-117, 12-121, and 42 U.S.C. section 1988. Section 12-117 "mandates an award of reasonable attorney fees to the prevailing party 'in any proceeding involving as adverse parties a state agency or a political subdivision and a person'" if the court finds that "the nonprevailing party acted without a reasonable basis in fact or law." *Byrd v. Idaho State Bd. of Land Comm'rs*, 169 Idaho 922, 933, 505 P.3d 708, 719 (2022). Similarly, attorney fees may be awarded on appeal under Idaho Code section 12-121 when the court is "left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Florer v. Walizada*, 168 Idaho 932, 936, 489 P.3d 843, 847 (2021).

Respondents argue Bracken's state law claims were pursued without a reasonable basis in fact or law because Bracken sued for damages against the City when his sole remedy was judicial review, and because he failed to exhaust administrative remedies before pursuing an action in district court. We have reversed the district court's order, holding that Bracken may pursue a legal claim related to Count Ten. Thus, Bracken's arguments about the doctrine of exhaustion are not frivolous. Accordingly, we decline to award Respondents attorney fees on appeal under Idaho Code sections 12-117 or 12-121.

Separately, Respondents request attorney fees for Bracken's federal claims under 42 U.S.C. section 1988. Section 1988(b) provides: "In any action or proceeding to enforce a provision . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Like the standard in Idaho Code section 12-121, attorney fees may be awarded under 42 U.S.C. section 1988 to a prevailing defendant if "the plaintiff's action was frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). Respondents claim Bracken's 42 U.S.C. section 1983 claims were frivolous, unreasonable and without foundation because they contravened years of federal precedent holding that there is no legitimate claim of entitlement to a discretionary land use permit.

We decline to award Respondents attorney fees related to Bracken's federal claims. Although we have held Bracken lacked a constitutional right to a conditional use permit, he made good-faith arguments about the deprivation of the process he endured to obtain the conditional use permit. Given the Respondents' conduct below, we decline to award them attorney fees on appeal.

28

## IV. CONCLUSION

We affirm the district court's dismissal of Counts One through Nine in Bracken's second amended complaint but reverse the district court's dismissal of Count Ten based on our conclusion that Bracken was excused from exhausting administrative remedies under the uniquely egregious facts here. We therefore vacate the judgment: (1) against Bracken as to Count Ten; and (2) awarding costs to the Respondents. No attorney fees or costs are awarded on appeal.

JUSTICES MOELLER and ZAHN, JUSTICE HORTON, pro tem, and JUDGE PETTY, pro tem, CONCUR.